IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1886.

## McMeen *versus* Commonwealth.

| 114 | 300 |
|-----|-----|
| 123 | 575 |
| 114 | 300 |
| 156 | 310 |
| 114 | 300 |
| o197 | 79 |

| 114 | 300 |
|-----|-----|
| 205 | 4608 |
| 114 | 300 |
| 23 SC | 1502 |
| 114 | 300 |
| 209 | 5469 |
| 114 | 300 |
| j212 | 5302 |
| 114 | 300 |
| 29 SC | 4625 |
| 114 | 300 |
| f222 | 298 |

1. It is competent on the trial of one indicted for murder where the death of the deceased was caused by poison sent to him by mail by the defendant, to show the relations existing between the parties prior and up to the time when the poison was taken from which the intent in sending the poison by the defendant may be inferred.

2. The admission of evidence not strictly in rebuttal is in the discretion of the court and is not error.

3. Unless exception be made at the time to the admission of evidence, the judgment of the court below as to its admission will be affirmed.

4. On the trial of one indicted for murder it is not error for the court to charge the jury that " You should be convinced as jurors when you would be convinced as citizens, and you should doubt as jurors only where you would doubt as men."

Per PAXSON, J. But it is an expression that is liable to mislead a jury, and for my own part I could wish it had never found its way to the books.

5. On the trial of one indicted for murder by poison it is not error for the court to charge the jury that, " If the defendant murdered his wife by means of poison it would be murder in the first degree and the jury needs neither definition nor instruction in regard to any other kind of homicide. If you find that the defendant sent the poison to his wife with the intent to take her life, then the law says that is murder in the first degree, and you should say so in your verdict. If you fail to find such guilty intent, then acquit the defendant."

(300)

6. It is not error, after the trial, to certify *nunc pro tunc* into the court of Oyer and Terminer an indictment for murder found in the Quarter Sessions of the Peace.

The omission of the court to charge the jury on a point of law to which its attention was not called and which was not requested, is not error.

October 4th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

Error to the Court of Oyer and Terminer of *Juniata county :* Of July Term 1886, No. 153.

This was an indictment against William Josiah McMeen for the murder of his wife, Nancy McMeen. The indictment was found in the Court of Quarter Sessions of the Peace of said county and after the trial it was certified into the Court of Oyer and Terminer of said county as of the date the indictment was found. (Ninth assignment of error.)

On the morning of March 9th, 1886, Mrs. Nancy McMeen, of Port Royal, Juniata county, Pennsylvania, died very suddenly under circumstances indicating poison by strychnine. After the death, an inspection of the rooms of her house discovered, in a room adjoining the scene of death, a tin plate, three spoons, a barlow knife, a pot of jelly and a paper of white powder, lying together ; there was jelly on the spoons, knife and plate, while some white powder could be seen in the jelly on these articles. Upon one of the spoons impressions of lips were noticed in the jelly still remaining on it. Some of the white powder was submitted to a crude test for strychnine, and a slight violet color was observed. Afterward a post-mortem examination was made and some of the contents of the stomach were analyzed, yielding some of the traces of strychnine.

It was shown on the trial of the case that on the day before Mrs. McMeen died, her husband, William Josiah McMeen, had left his home in Port Royal and had gone to Patterson where he had bought strychnine, which, it is alleged, he put in a letter and mailed to his wife in Port Royal. McMeen then took the cars for Harrisburg where he was on the next morning when the news of his wife's death reached him. The purchase of the poison was not denied by the husband, but suspicion was aroused by reason of contradictory stories told by him as to when he had made the purchase, and as to where he was when the news of Mrs. McMeen's death was communicated to him.

On the trial the commonwealth made the following offer of evidence :

Commonwealth's counsel offer to prove that the witness, Eliza Funk, lived at the home of Josiah McMeen; that she is

his mother-in-law; that at times he was very profane to his wife and frequently made threats in a profane way, that he was going to leave home, and that the last threat was made about three weeks before her death; that when appealed to, not to leave because it would break her heart, that is, the witness's heart, he replied with profanity that she would have more than that to break her heart.

Prisoner's counsel object: That this offer does not amount to a threat against any one, and especially is not a threat against his deceased wife. It is too vague and inconclusive to allow any inference to be drawn from it. And if doubtful as evidence, *in favorem vitae*, should be rejected.

THE COURT. We think it would be evidence to go to the jury for their consideration in connection with the other evidence in the case; it is at least admissible to show want of amicable relations between husband and wife, as well as prophetic of something to happen of serious consequence. We therefore overrule the objection, admit the offer and seal a bill for the prisoner. (First assignment of error.)

· In rebuttal the court admitted the testimony of Fannie Funk and Margaret Minichan on behalf of the Commonwealth, to prove that they had searched the house of the prisoner for a letter or some message left by the deceased to explain her act of (supposed) suicide, in the forenoon of the 9th of March, 1886, before Mrs. Moist had come to the house and that they had found no poison envelope, Mrs. Moist having sworn that she did find such an envelope, after 11 o'clock A. M. It was the theory of the Commonwealth that the prisoner had removed the poison envelope and thus deceived his wife into taking the poison; hence all evidence tending to prove this theory was necessarily in chief. Up to this time the Commonwealth had given all the evidence she deemed necessary to show that neither letter nor poison envelope was found after search. (Second assignment of error.)

Commonwealth's counsel offered to prove that she told Josiah McMeen, the defendant, that there was a letter, and showed it to him, that had come from Port Royal for Alfred, his brother-in-law, from Fannie, his wife, and I said, I have a notion to open it, and then I said, I have already dispatched for him and he will be here some time to-day; that the prisoner said, 'Let us open it,' and he took it out of my hand and was going to open it, and I took it from him and put it on the window. This was after I had heard of the death of Nan and had communicated the same to him."

Prisoner's counsel object: That the testimony amounts to nothing, only that he was anxious to hear from home, the letter being from Port Royal.

[McMeen v. Commonwealth.]

THE COURT: We think the evidence should go to the jury to be considered by them in connection with all the other evidence in the case. It tends to show anxiety in the mind of the prisoner; whether that anxiety arose from motives of affection, or from a different cause is for them to determine from the connection of this evidence with the other evidence. We therefore overrule the objections, admit the evidence and seal a bill for the prisoner. (Seventh assignment of error.)

The following was the eighth assignment of error:

The court erred in admitting any testimony as to the defendant's contradictory statements on immaterial matters, until a felonious homicide should have been proven, and the defendant connected therewith in some manner.

The court charged the jury *inter alia* as follows:

"You should be convinced as jurors where you would be convinced as citizens, and you should doubt as jurors only where you would doubt as men." (Third assignment of error.)

"If the defendant murdered his wife by means of poison it would be murder in the first degree, and the jury needs neither definition nor instruction in regard to any other kind of homicide. If you find that the defendant sent the poison to his wife, with the intent to take her life, then the law says that is murder in the first degree, and you should say so in your verdict. If you fail to find such guilty intent then acquit the defendant." This took from the jury the power to find the defendant guilty in any less degree, and they so understood it, as evidenced by the following incident which happened when the jury was polled·

The name George Hockenbrough being called, he answered, "Guilty."

The COURT. "In what degree?"

Juror. "I thought there could be but one degree." (Fourth assignment of error.)

The following was the fifth assignment of error:

The commonwealth having shown the prisoner sent his wife the poison by mail, put up by the druggist so as to indicate what it was; that she received it in the afternoon of the eighth of March, had it in her custody, and took it herself the next morning; that she was then heard to cry out, "God help me!" thereby showing that she knew she had taken a fatal dose, and all this with the prisoner forty-six miles away, without any evidence to show, or even permit the inference that he had deceived her, and in view of the uncontradicted evidence of three witnesses that three weeks before her death she requested the prisoner to get her strychnine; the court should have pointed out these facts, and in resolute, vigorous

[McMeen *v.* Commonwealth.]

language told the jury that the elements of the crime of murder were wanting. Instead of calling the attention of the jury to the absence of evidentiary facts the court dwelt with minuteness upon the prisoner's contradictions in talk about immaterial things, until the jury thought they could safely convict upon the strength of the prisoner's inconsistent statements as to where and when he heard of the death of his wife and when he had bought the poison.

The following was the sixth assignment of error:

The court erred in not instructing the jury that the evidence was insufficient to convict.

The following was the tenth assignment of error:

The court erred in not charging the jury "that the defendant having offered a reasonable hypothesis of innocence consistent with every fact in the case, and not disproven, it must be accepted and the prisoner acquitted."

Neither the commonwealth nor the defendant presented any points for charge to the court.

Verdict, guilty of murder in the first degree. A new trial was refused. The prisoner was sentenced, whereupon he took this writ and filed the assignments of error as above shown.

*B. F. Junkin* and *George Jacobs (Jeremiah Lyons* with them), for plaintiff in error.

*Ezra D. Parker* and *Alfred J. Patterson, (E. S. Doty*, district attorney, with them), for the commonwealth, defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, January 3d, 1887.

We find no error in the admission of the evidence referred to in the first assignment. It was a part of the commonwealth's case to show motive or malice on the part of the prisoner. He was upon trial for the murder of his wife. The evidence leaves no room for doubt that the deceased came to her death by poison, and that the poison was sent to her by the prisoner. Whether it was sent for the purpose of taking her life, or innocently and for a proper purpose, was the main question of fact in the case. It was clearly competent to show the relations between the prisoner and his wife prior and up to the time when she took the poison. The evidence referred to bore upon this point, and although by no means strong, was admissible : Wharton's Criminal Evidence, § 756; Archbold's Crim. Practice and Pleading, 365 and 382; Hopkins *v.* Com., 50 Penn. St., 29; Sayres *v.* Com., 88 Id., 291.

The second assignment does not require discussion. The

[McMeen v. Commonwealth.]

admission of the testimony of Fannie Funk and Margaret Minichan was in the discretion of the court below. It was merely a matter of the order of evidence. The witnesses were called in rebuttal, and if in point of fact it was not strictly rebuttal, it was as before said, within the discretion of the court, and not the subject of error. Aside from this there does not appear to have been an exception taken in the court below.

Third assignment. It is alleged that the court erred in saying to the jury that "you should be convinced as jurors when you would be convinced as citizens, and you should doubt as jurors only where you would doubt as men."

The idea embodied in this language appears to have originated with Chief Justice GIBSON, who said in Com. v. Harman, 4 Penn. St. R. at page 273, that a juror "is not at liberty to disbelieve as a juror while he believes as a man." The learned Chief Justice applied this language to the evidence in the case, and in this connection the remark was entirely proper. In the subsequent case of Fife v. The Com. 29 Penn. St. R., it was held that similar language, although liable to be misunderstood by a jury, is not erroneous as a matter of law. Yet even this ruling, it appears to me, requires some qualification. If it does mislead the jury, or is so used that it is likely to mislead the jury, we regard it as error. But in the case in hand, as in Com. v. Harman, the language used was used in connection with the evidence. Thus, the learned judge said in the sentence immediately preceding the one assigned as error: "This reasonable doubt is not one the jury will reach out for to relieve them from finding a verdict of guilty, but such a doubt as is left from the failure of the evidence to convince your minds of the guilt of the defendant." Undoubtedly, a juror should be convinced *from the evidence* where he would be convinced as a man, and when the language is applied in this way, we see no technical error. But as was said in Fife v. The Com., *supra*, it is an expression that is liable to mislead a jury, and for my own part I could wish it had never found its way in the books. Severed from its connection it is easy to see how a jury may be misled. There are many cases in which jurors, as men, may believe a person on trial for a crime to be guilty, when the evidence in the case would not warrant a conviction.

Fourth assignment. We find no error in that portion of the charge embraced in this assignment. The learned judge told the jury that murder by poison was murder of the first degree. In doing so he was merely repeating the Act of Assembly defining the offence. It is true the jury have the power even in cases of murder by poison to convict of a lesser

grade of crime. So they have the power in such cases to acquit altogether in the face of the clearest evidence. In either case it would be a disregard of their duty and their oaths. If the learned judge had said to the jury as in Rhoads *v.* Com., 218 Penn. St. R., that they *must* convict of murder of the first degree or acquit altogether, it would have been error. But he did not. He plainly told the jury what the law was, and then in the last paragraph of his charge said to them: "If you find him guilty of murder you must also say in what degree." The charge of the learned judge upon this point was not as strong as in the later case of Schaffner *v.* The Com., 72 Penn. St. R., 60, when the court instructed the jury in a case of murder by poison that "if you are convinced that he is guilty of the crime, it is murder in the first degree as declared by the Act of Assembly, and it is your duty to say so without regard to the consequences to the prisoner." This ruling was affirmed in this court in a careful opinion by Mr. Justice AGNEW, in which the previous cases of Rhodes *v.* The Com. and Lane *v.* The Com. were considered. The distinction is between a proper statement of the law and a binding instruction. The latter is held to be error though the case be never so clear.

Fifth assignment. The substance of this assignment is that the court did not tell the jury "in resolute vigorous language" that the elements of the crime of murder were wanting."

We understand this assignment, in connection with the sixth, to mean that the court should have instructed the jury that there was not sufficient evidence of the crime to submit to the jury. We cannot assent to this proposition. While the evidence was purely circumstantial, and perhaps not very strong, the learned judge would have incurred a very serious responsibility in withdrawing it from the jury. We have two facts fully proved. 1st, that the deceased came to her death by poison, and 2d, that the poison was sent to her by the prisoner in an envelope through the mail. If he intended her to take it, and if he deceived her into taking it, he is guilty of murder. Such a fact can rarely be proved by direct evidence. If it may not be proved by the circumstances surrounding the transaction, it cannot be proved at all, and men could poison their wives with impunity. Under such circumstances the conduct of the accused at and immediately after the transaction may be given in evidence to show the intent. Was the conduct of the prisoner subsequent to the taking of the poison by his wife consistent with the theory of innocence. It was said by Justice STRONG in Cathcart *v.* Com., 37 Penn. St. R., at page 113: "The fabrication of false and contradictory accounts by an accused criminal, for the sake of diverting

inquiry or casting off suspicion, is a circumstance always indi-
catory of guilt." No rule of criminal law is better settled
than this. Applying it to this case we find that the evidence
on behalf of the commonwealth abounds with false and con-
tradictory accounts given by the prisoner both as to the pur-
chase of the poison and his whereabouts immediately there-
after. For the purposes of this case we must assume all of
this testimony to be true. There was also testimony to the
effect that the poison label placed by the druggist upon the
article when he sold it could not be found in the house after
the death of the deceased, although diligent search had been
made for it. If the prisoner removed that label and then sent
the poison to his wife no jury would long hesitate about his
guilt. It is true the prisoner produced a witness who swore
that she found the label and destroyed it. But that was for
the jury; as before observed we are considering only the com-
monwealth's evidence. Then, if it be true, and we must
assume it to be so, that the prisoner told the witness, Dwight
Mead, the next morning, that his, prisoner's wife, was dead,
when he had not and could not have received any communi-
cation to that effect, it was a circumstance likely, and justly
so, to have great weight with the jury, in determining the
question of his guilt. Without going into extended detail,
we are of opinion that there was that, in the acts and declara-
tions of the prisoner, pointing to his guilt, which no court
could properly withdraw from the consideration of the jury

Seventh assignment. The evidence referred to in this as-
signment was not important, but we are not prepared to say
that it was incompetent. We think the learned judge below
was correct in saying that it tended to show anxiety in the
mind of the prisoner." It was for the jury to find from what
such anxiety arose, under all the peculiar circumstances of
this case.

Eighth assignment. This is entirely without merit. Prac-
tically considered it amounts to this, that the prisoner's con-
tradictory statements are not competent evidence against him
until his guilt is established by other means.

Ninth assignment. This is purely technical. That it was
not error to certify the record of the Quarter Sessions into
the Oyer and Terminer, nunc pro tunc, is settled by Brown v.
Com., 78 Penn. St. R., 122.

Tenth assignment. The court was not requested to charge
as stated in this assignment. The omission to charge upon a
point to which the attention of the court was not called, and
no request made, is not error: Fox v. Fox, 9 Penn. St. R., 60.
To have charged as indicated would have withdrawn the case
from the jury, and we have said in the discussion of the fifth

and sixth assignments, that there was sufficient evidence to go to the jury.

Judgment affirmed.