Commonwealth *v.* Boden, Appellant.

Argued October 8, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK, and McBRIDE, JJ.

*Robert M. Keim,* with him *Frederick F. Coffroth,* for appellant.

*Frank A. Orban, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BELL, April 18, 1960:

A jury returned a verdict of murder in the first degree with penalty of life imprisonment. Defendant appealed from a judgment and sentence thereon, alleging (a) the usual reasons for a new trial, (b) trial errors, and (c) the Court's refusal of the defendant's point for binding instructions.

Defendant was indicted for arson and for murder. The trial Judge withdrew from the jury the indictment for arson, which requires a person "to wilfully and maliciously set fire to or burn a dwelling house or other building." However, the trial Judge and the lower Court agreed with the jury that the Commonwealth had proved beyond a reasonable doubt that defendant had

committed a willful, deliberate and premeditated murder by setting fire to and thereby killing his wife.

We shall first dispose of defendant's motion in arrest of judgment, considering the evidence, as the law requires us to do, in the light most favorable to the jury's verdict: *Commonwealth v. Wright*, 383 Pa. 532, 119 A. 2d 492; *Commonwealth v. Brown*, 184 Pa. Superior Ct. 494, 136 A. 2d 138.

Defendant and his victim, Mary Growall Burawski Boden, were married in August 1957. They lived in her home in Rockwood Borough, Somerset County, Pa.

George D. Sterner, a neighbor of the defendant, saw smoke coming from the second story of the Boden home at approximately 11:15 a.m. on Sunday morning, November 17, 1957. Shortly thereafter, another neighbor, John M. Barclay, seeing smoke, entered the Boden home to determine whether anyone was inside and immediately went to the second floor believing the Boden's bedroom was located there. He testified: "There was a tremendous amount of smoke upstairs, in fact you couldn't have stayed there too long at one time, after a short period of time I came down again and went back out on the porch . . ."

When informed by another neighbor who was alarmed by the smoke, that the bedroom was on the first floor, Barclay re-entered the Boden house with another neighbor, Charles Hostetler. The smoke was so thick on the first floor that they proceeded on their hands and knees to the bedroom where, at approximately 11:55 a.m. they discovered Mrs. Boden, still living, lying on the floor between the two beds, smoldering bedclothing and blankets under her, covered by what looked to be a housecoat around the lower part of her body. Moments later firemen arrived and removed the body from the premises to the Somerset Community Hospital at Somerset, Pennsylvania, where she was treated by Dr. Harold E. Musser. She was

unconscious but still living. She suffered severe burns in her right groin which was so deeply burned that a fist could be thrust into it. She also suffered intense burns on her entire right leg, right foot and to a lesser extent on the left leg. There was practically no burning of her face, head, or neck, and most of her upper back.

The testimony, which was not objected to, established that the victim had extensive wounds and markings on her body for at least one whole month prior to her death. The victim was seen by Fred R. Gary on November 14, with blood running down her face. In October 1957, this same witness saw defendant strike the victim with such force that he knocked her off a stool. Defendant in his testimony admitted this. On November 16, 1957, Gary saw the victim with a cut above her right eye and a cut below her lip. The photographic exhibits show a gaping wound above the eye in the eyebrow. On another occasion Gary saw her with a swollen ankle and a black eye. In explaining these marks and wounds, the victim stated to Gary that they were caused by the defendant having struck her.

The burning of the house was limited to a section of the flooring *immediately around* her body and was located principally at her feet and legs. The entire burned or scorched area of the flooring and linoleum was only 5.748 square feet. A very small part of this area was burned entirely through the flooring.

Several witnesses testified that defendant had said he hoped "his wife would kick off soon", and had explained how he would inherit her estate. The Commonwealth further proved that Mrs. Boden had reinstated after her marriage a life insurance policy and had made it payable to defendant; and one witness testified that defendant told him he would get about $65,000 if his wife died.

Several witnesses testified tnat Melvin Boden had previously demonstrated the manner of setting fire to whiskey. The Commonwealth also called expert witnesses, particularly a chemist and the fire marshal, who testified that an accelerant was used to ignite the bed clothing with which the victim was carefully surrounded.

The attending physician and the surgeon who conducted the post-mortem examination testified that death was caused by extensive burning of the body of Mrs. Boden.

Carl Hileman, in response to defendant's telephone call, went to the Boden home that Sunday morning between 10:30 and 10:50 a.m., parked his pick-up truck in front of the house, remained in the truck, sounded his horn and a few minutes later defendant and his brother, Harry Boden, came out of the house, got into the truck and went to the home of Paul Boden several miles distant. Defendant did not return to his home that day until after he was summoned to the hospital. It was admitted that defendant and his brother, Harry Boden, were the only persons, except Mrs. Melvin Boden, in that home during the Saturday night and on the morning of Sunday, November 17th, prior to the entry of the neighbors, firemen and others after the smoke had been observed by the neighbors.

Anthony Aurigemma, who was an undercover man for 32 years for the United States Government and for many years an undercover man for the National Board of Fire Underwriters, was placed in the same cell with defendant in the Somerset County jail. He testified of conversations he had with defendant. In particular he testified that defendant told him that Mrs. Boden drank excessively; that the night before the murder he and his brother and his wife sat up all night drinking whiskey and smoking cigarettes; that next morning (Sunday morning) he and his wife had a fight; that he

gave his wife two drinks of whiskey; that she was lying on the floor drunk and unconscious; that he beat her up and then got hold of an ashtray with some cigarette butts in it, put some book matches, together with rubbing alcohol into the ashtray, mixed it with Vitalis, covered his wife with a lot of bedclothing, put the ashtray on her stomach, lighted a cigarette and put it in the ashtray and set fire to the book matches; and that he and his brother then left his home.

Defendant took the witness stand and denied the killing. He also denied making any incriminating statements to Aurigemma. In his testimony, which was very brief, defendant said that he and his brother spent Saturday night at his home; that on Sunday morning he gave his wife two drinks of whiskey; and that he and his brother Harry* left his home between 10:30 and 10:50 a.m. and went to their brother Paul's home. He never knew anything about his wife's being burnt until he was called to the hospital later that Sunday afternoon.

The evidence is clearly and unquestionably sufficient in law to justify a verdict of first degree murder. Proof by eyewitnesses, or direct evidence of the corpus delicti, or of identity, or of the commission by the defendant of the crime charged is not necessary. Few criminals are caught "red-handed", and if eyewitnesses of the crime were necessary few murderers, arsonists and burglars could ever be convicted. It is clearly settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt: *Commonwealth v. Sauders*, 390 Pa.

---

* Harry Boden pleaded guilty as an accessory after the fact to the murder. See: Section 1105 of The Penal Code of June 24, 1939, P. L. §872.

379, 134 A. 2d 890; *Commonwealth v. Nasuti,* 385 Pa. 436, 123 A.. 2d 435; *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A. 2d 743; *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A. 2d 820; *Commonwealth v. Lowry,* 374 Pa. 594, 600, 98 A. 2d 733; *Commonwealth v. Danz,* 211 Pa. 507, 60 A. 1070; *Commonwealth v. Carey,* 368 Pa. 157, 82 A. 2d 240; *Commonwealth ex rel. Garrison v. Burke,* 378 Pa. 344, 348, 106 A. 2d 587; *Commonwealth v. Bolish,* 381 Pa. 500, 113 A. 2d 464; *Commonwealth v. Hooe,* 187 Pa. Superior Ct. 330, 144 A. 2d 580.

## Trial Errors

Defendant's statements as to the insurance he would recover, or the money he would receive if his wife died, are clearly admissible as evidence of motive; statements by defendant that (a) he wished his wife would die, and (b) that he beat her up that morning, or at any other time not too remote, are clearly admissible.

In *Commonwealth v. Patskin,* 372 Pa. 402, 413, 93 A. 2d 704, the Court said (page 413) : "This evidence of beating his wife was admissible as showing, with other incidents, ill will, motive or malice which the defendant had toward his wife. Commonwealth v. Peyton, 360 Pa. 441, 62 A. 2d 37; Commonwealth v. Jones, 269 Pa. 589, 113 A. 57.

"In Commonwealth v. Peyton, 360 Pa. 441, 452, 62 A. 2d 37, this Court said: ' "In almost any situation—whether the fact of killing is denied, or whether self-defense is pleaded, or whether it is contended that by reason of provocation the killing is reduced to manslaughter—proof of the previous relations of the prisoner and the deceased, whether friendly or hostile or whatnot, is relevant and competent." . . .' " See also: *Commonwealth v. Giacobbe,* 341 Pa. 187, 19 A. 2d 71; *Commonwealth v. Del Giorno,* 303 Pa. 509, 154 A. 786; *Hester v. Commonwealth,* 85 Pa. 139; *McManus v.*

*Commonwealth,* 91 Pa. 57; *McMeen v. Commonwealth,* 114 Pa. 300, 306, 9 A. 878; *Commonwealth v. Minoff,* 363 Pa. 287, 69 A. 2d 145, and other cases cited in *Commonwealth v. Truitt,* 369 Pa. 72, 81, 90, 85 A. 2d 425, and *Commonwealth v. Marshall,* 287 Pa. 512, 135 A. 301.

Defendant contends that it was error to allow the introduction of expert evidence with respect to the fire and to the testing by defendant of the burning qualities of whiskey approximately three weeks prior to his wife's death. It was not only the theory of the Commonwealth, but the Commonwealth proved (if Aurigemma is believed, as the jury must have believed him) beyond a reasonable doubt that defendant not only set fire to and burned his wife to death, but used an accelerant to produce the fire which caused his wife's death. This was clearly not an ordinary fire. The entire burned or scorched area of the room was less than 6 feet square and yet the fire was so intense that one small area was burned completely through the floor. Only parts of the victim's body were burned; and the burning was so deep in the area of the groin that there was a crevice so large a fist could be inserted in it. According to the testimony of Herbert C. Dixon, an expert in chemistry with extensive experience investigating fires of suspicious origin, if this fire had been caused merely by smoldering cigarettes, the length of time required for the smoke to travel from its point of origin in the first floor bedroom to the upstairs window where it was seen by neighbors, would be much longer than occurred in this case. These circumstances singly and together demonstrate that expert evidence concerning the nature of the fire was admissible.

In *Commonwealth v. Nasuti,* 385 Pa. 436, 123 A. 2d 435, this Court sustained the testimony of two qualified experts that the fire was of incendiary origin. Speaking through Mr. Chief Justice STERN, the Court

said (page 443) : "Expert testimony is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience. Certainly laymen could hardly be expected to have knowledge in regard to various types of fires and the difference in the nature, violence and intensity of flames resulting from the burning of inflammable liquids or other materials as contrasted with the burning of a wooden counter or hair upholstery, . . ." This contention of defendant is devoid of merit.

Defendant also objected to the introduction of the photographs. There is likewise no merit in this contention. When a defendant pleads not guilty, no one knows whether a crime has been committed or what his defense will be. In such cases it is especially important to admit photographs of the victim to aid the jury in their understanding of the alleged crime, whether it was accidental or felonious, the kind of crime it was, exactly what caused the victim's death, and what, if any, connection defendant had with it. The admission of photographs is largely within the discretion of the trial Court and will not be reversed except for a flagrant abuse of discretion. However, photographs are not admissible for the purpose of exciting or inflaming the emotions of the jury, and the trial Judge must admonish the jury against permitting the photographs to prejudice them against defendant: *Commonwealth v. Novak*, 395 Pa. 199, 212, 150 A. 2d 102, and numerous cases cited therein. In this case it was especially wise for the trial Judge to admit the photographs, not only because they were an aid to the understanding of the crime as explained to them by the witnesses who referred to the photographs, but in addition thereto the photographs aided the jury in determining whether this was an accidental burning from Mrs. Boden's cigarette, which she might have dropped if drunk, or a planned

and deliberate burning by defendant of his wife with the intent to kill her.

The only question raised by defendant which has any possible merit is his contention that it was error to admit the testimony of Frances Gary and Fred Gary that after they had seen Mrs. Boden cut and bruised about her face and ankle on one occasion one day, on another occasion three weeks, and on another occasion one month prior to her death, Mrs. Boden told them that they had been inflicted by her husband. In the first place, no objection was made to this testimony of Frances Gary and consequently, even if her testimony on this point was hearsay, it may be considered as fully and with the same probative value as direct evidence: *Stevens v. Reading Street Railway Co.*, 384 Pa. 390, 121 A. 2d 128; *Foulkrod v. Standard Accident Insurance Co.*, 343 Pa. 505, 23 A. 2d 430; *Commonwealth v. Brown*, 264 Pa. 85, 107 A. 676; *Poluski v. Glen Alden Coal Co.*, 286 Pa. 473, 133 A. 819; *Commonwealth v. Truitt*, 169 Pa. Superior Ct. 326, 82 A. 2d 699.

Objection was made to this testimony of Fred Gary but not on the ground that it was hearsay. The rule is well settled that a party complaining, on appeal, of the admission of evidence in the Court below will be confined to the specific objection there made: *Murray v. Frick*, 277 Pa. 190, 121 A. 47; *Laginsky v. McCollough*, 280 Pa. 286, 124 A. 431.

At the conclusion of the trial the trial Judge withdrew from the consideration of the jury the indictment for arson. Defendant contends that it was therefore the duty of the trial Judge to likewise instruct the jury to disregard all evidence of burning. Defendant has misconceived the provisions of the Penal Code which respectively make arson and murder a crime. Section 905 of the Penal Code of 1939* provides: "Who-

---

* Act of June 24, 1939, P. L. 872, 18 PS §4905.

ever, willfully and maliciously, sets fire to or burns . . .
any dwelling house . . . or any other building . . . is
guilty of . . . arson." In the instant case the intent of
the defendant was not to burn the dwelling house; his
intent was to commit a willful, deliberate and pre-
meditated murder of his wife by setting fire to her body
and the blankets enclosing her.

We have considered all the other contentions made
by defendant and find no merit in any of them.

Judgment and sentence affirmed.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The jury found this defendant guilty of murder, and
the record amply justifies the verdict. I can only
deplore that, with the quantity of evidence the Com-
monwealth could present and did present to substan-
tiate the charge of murder it should have introduced
improper evidence which was not at all needed to
support the prosecution but whose introduction, as I
view it, constituted a violation of the defendant's rights
and, therefore, to that extent denied him due process
and thus vitiated the verdict.

The Commonwealth called to the witness stand a
Frances Gary who testified that a month before the
homicide the victim revealed to her some marks on
her body and said that the marks were the result of
blows inflicted upon her by the defendant. This testi-
mony was out of order because it was distinctly hear-
say and it was so far removed from the occurrence
which caused the victim's death, that it could not pos-
sibly be regarded as part of the res gestae of the final
crime.

In *Commonwealth v. Gardner*, 282 Pa. 458, 465, this
Court, discussing statements coming within the rule of
res gestae, said: "Their sole distinguishing feature is

that they should be the necessary incidents of the litigated. act,—necessary, in this sense, that they are a part of the immediate preparations for, or emanations of, such act, and are not produced by the calculating policy of actors." Mr. Gary's testimony did not qualify under this rule.

I believe that the Trial Court also erred in allowing the introduction of photographs of the murder victim's dead body. The photographs had no probative value and could only serve to inflame the jury against the defendant. Even the trial Judge had doubts as to whether the exhibits had any evidential value, but he knew that they might arouse sympathy for the deceased and hatred against the defendant. He said: "There are among the exhibits in this case five pictures showing the charred condition of the body of Mrs. Melvin Boden after her demise. Let not those pictures prejudice you in any way, they were admitted after the doctor and those familiar with the condition in which she was found after the fire testified, and they all testified that they substantially represented that condition, they are given to you and admitted into this record with the caution that they shall in nowise prejudice you but you may use them *for what evidential value they may have.*" (Emphasis supplied.)

The Judge's exhortation to the jury that they should not allow the gruesome pictures to prejudice them against the defendant is reminiscent of Marc Antony's speech in which he told the Roman populace that he must not let them see dead Caesar's body or hear dead Caesar's will because "it will inflame you, it will make you mad." And then, after conjuring up the terrible things the populace might do if they saw the body and heard the will, he proceeded to show them the body and to read to them the will.