## Commonwealth v. Rushing

*Samuel J. Halpren,* District Attorney, for Commonwealth.

*G. Clinton Fogwell, Jr.,* for defendant.

RILEY, J., May 1, 1962.—The questions here arise on motions for arrest of judgment and for a new trial following a verdict of guilty rendered against defendant upon a charge of operating a motor vehicle while his license was suspended and prior to its restoration. While numerous reasons were assigned in support of each motion, with only a few pressed in argument, we need only consider the basic reason assigned to the motion in arrest of judgment as we deem such to be controlling of the disposition of the case.

By the Act of June 15, 1951, P. L. 585, 19 PS §870, the scope of the motion in arrest of judgment was made to embrace the sufficiency of the evidence in support of the verdict as well as defects appearing on the face of the record: Commonwealth v. Ornato, 400 Pa. 626; Commonwealth v. Boden, 399 Pa. 298; Commonwealth v. Moore, 398 Pa. 198. The test applied is appropriately stated by Justice Bell in Commonwealth v. Kravitz, 400 Pa. 198.

"The most important question in this appeal is whether the lower Court erred in dismissing defendant's motion in arrest of judgment.

"The test of the sufficiency of evidence—irrespective of whether it is direct or circumstantial — is whether accepting as true all evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. . ."

Defendant is charged with driving a motor vehicle while his license was suspended and before such privilege was reinstated. The indictment avers the crime in the exact words of section 624-6, Act of April 29, 1959, P. L. 18, 75 PS §624-6; "Did then and there unlawfully operate a motor vehicle upon the highways of this Commonwealth, to wit, in the County of Chester aforesaid, *after his operating privilege was suspended and before such operating privilege was reinstated*" (Italics supplied).

At the trial of the case, the Commonwealth in support of the charge offered a copy of the record of the Department of Revenue and the suspension notice itself was the only part of the record permitted to go out with the jury. At this point we must affirm the admissibility of certified copy of the original suspension were it relevant to the charge against defendant as it was specifically certified by the Secretary of Revenue to be an accurate copy of the original. Public records are admissible in exception to the hearsay rule (Laginsky v. McCollough, 280 Pa. 286; Wigmore, Evidence (3rd ed.) Vol. 5, §1631), and certified copies are as admissible as the originals by statutory directive in so far as the records of the Department of Revenue are involved (Act of April 29, 1959, P.L. 58, sec. 1224). Certainly the entire record of the department need not be submitted and the frivolity of defendant's objection on this ground, namely that the entire record of the department or none be admitted, is clear by his own insistence immediately thereafter that irrelevant

and possibly prejudicial matter be blotted out of Commonwealth's other exhibit, C-2, which we will discuss later at length.

The difficulty we find with this extract from the record, which is fundamental to the whole case, is that the suspension evidenced by the exhibit is one for violation of section 1405 of the code, an entirely separate and distinct crime from that set forth in section 626. Some confusion exists in the cases and in the trial judge's charge here because of failure to recognize that the legislature, for reasons best known to itself, has established two separate and distinct crimes for driving while a license is suspended dependent upon the cause of suspension.

The language of section 624-6 of article 6 is indeed broad and would seem to include all instances of driving under a suspended license for any reason. However, the legislature in treating of suspensions of license due to failure to furnish required proof of financial responsibility, article 14, sec. 1432, established a distinct criminal offense. In section 624, it is provided that one who violates the prohibition of section 624-6 "shall be guilty of a misdemeanor, and shall, upon conviction thereof in a court of quarter sessions, be sentenced to pay a fine of not less than one hundred dollars ($100.00) and not more than five hundred dollars ($500.00) and costs of prosecution, or undergo imprisonment for not more than three (3) years or suffer both such fine and imprisonment." Section 1432 (a) provides "Any person whose license or registration or nonresident's operating privilege has been *suspended* or revoked *under this article* [Article 14], and who during *such suspension* or revocation drives any motor vehicle upon any highway . . . shall be guilty of a misdemeanor and, upon conviction, shall be fined not more than five hundred dollars ($500.00) or imprisoned not exceeding six (6) months, or both, in the

discretion of the court" (Italics supplied). An analysis of both sections as well as other pertinent provisions relating to each class of suspensions leads to the certain and unavoidable conclusion that the legislature fully intended to establish two classes of suspensions with differing consequences and that the criminal charge embodied in article 6 is applicable only to violations of operating prohibitions when the license is suspended by reason of the various causes under that article.

Aside from section 1432(a) specifically designating the misdemeanor there established to embrace violations "under this Article", and ascribing thereto entirely different and inconsistent penalties from those set forth in section 626, there are several other clear indications of legislative intent to treat the types of suspension on entirely different and distinct bases. In suspensions arising under article 6, a hearing by the Secretary of Revenue is mandatory, suspensions are for definite periods and continue until "reinstated" and appeals from such suspensions are to the court of the county of the operator's residence. Under article 14 where suspensions result because of lack of proof of financial responsibility, no hearing is provided for, the suspension is indefinite and continues until the required proof is filed and appeals from such suspensions may be made only to the Court of Common Pleas of Dauphin County. It is not for us to reason why but simply to recognize and apply the obvious fact that the legislature created two separate and distinct categories of license suspensions and established a criminal charge applicable to violations of operating under suspensions arising from article 6, and a second and distinct criminal charge arising under the provisions of article 14. The indictment reads in the exact words of section 624 and in no manner refers to or employs language identifiable with section 1432, and even the

trial judge in his charge refers to the crime as that embraced in the provisions of section 624. We conclude that no evidence exists of any suspension supporting the misdemeanor set forth in section 624 and, therefore, the motion in arrest of judgment must be sustained.

Even were this not so and the language of the indictment be considered sufficiently broad to embrace the misdemeanor of section 1432 and we determine that it is not so comprehensive, there is yet another compelling reason why the motion in arrest of judgment must be sustained. Under the terms of section 1405, the section under which defendant's license was suspended in 1959, the duration of suspension is stated as follows: ". . . Such suspension shall continue until such resident furnishes evidence of his compliance with the law of such other state or the District of Columbia relating to the deposit of security." To sustain a conviction the Commonwealth might well show the fact of suspension and allow defendant to establish the affirmative defense that such proof was in fact produced and the suspension thereby terminated. A status once established is presumed to continue: Donze v. Devlin, 329 Pa. 1; Henes v. McGovern, 317 Pa. 302. However, in this case the Commonwealth's own witness admits that defendant did produce what appeared to be a perfectly valid 1960-61 license card and a then current 1961-62 license card. This fact is not established by any evidence of defendant, for he produced no evidence, but from the Commonwealth's own witness. Under the Commonwealth's evidence here, no status of suspension is shown to exist on April 28, 1961, the date of alleged violation. The Commonwealth's evidence rebuts the presumption and in substance shows only that, in August of 1959, defendant's license was suspended under section 1405 of the code and that subsequently defendant apparently held valid

licenses for the next two ensuing years. No explanation is offered as to how the licenses came to be issued except in argument that they *may* have been issued by mistake or fraud or otherwise surreptiously. It is equally, if not more cogently, argued that proof of responsibility had been furnished and the suspension no longer existed. Under these circumstances, the least that is required would be to explain the apparent contradiction by admissible evidence that the department had not issued the licenses produced or that the suspension was not in fact terminated. Under the state of the Commonwealth's evidence, we conclude that there is not sufficient evidence to prove beyond a reasonable doubt that defendant's license was in suspension on April 28, 1961.

The Commonwealth in an attempt to show that no restoration of license was made by the Secretary of Revenue offered exhibit C-2 in evidence and the same was admitted over defendant's objection. This exhibit purports to be a certification by one John J. Simonetta, Director of Enforcement, under the heading: "In compliance with your request, I hereby certify that I have caused a search to be made of the files of the Department of Revenue and herewith is a true record in the name of Lewis Rushing, Jr." It then contains defendant's name and address and includes reference to his 1961 license by license number and year, and at a printed line captioned "restored" states "not restored" and notes the suspension of August 3, 1959. We are of the opinion that such a certificate is clearly inadmissible in evidence and consequently is not "evidence upon which, if believed, a jury could properly have based its verdict": Commonwealth v. Kravitz, supra.

While public records are admissible in exception to the hearsay rule by expedience (Laginsky v. Mc-Collough, supra; Wigmore, Evidence (3rd ed.) Vol. 5, §1631), and certified copies of the records of the De-

partment of Revenue are admissible as the originals would be under section 1224 of The Vehicle Code, a clear and decisive distinction is made in the law of evidence between records or copies of records and a mere certification by a public official as to the contents of records: Talbot v. Jansen, 3 Dallas 133; Jones v. Hollopeter, 10 S. & R. 326. Wigmore, Evidence (3rd ed.), Vol. 5, §1674 at page 704 states, "The legal consequence of the distinction is that at common law (with two exceptions) no authority to give certificates was implied from the office alone . . . but the marked tendency of the Courts was to require an express authority to make a certificate, before it could be received to prove the facts certified."

And at page 705:
"It follows, then, on the general principle that the certificate is admissible only for those facts covered by the terms of the authority . . ."

And again at page 749:
". . . At common law, therefore, it was entirely settled that no custodian had authority to certify any less than the entire and literal terms of the original, — in short, a copy in the strict sense of the word; and the rule was applied to all varieties of documents."

The rule is absolute and definite that a public official, without statutory authority, may not certify as to the contents or give his opinion as to the contents of a public record; 32 C.J.S. §640 at page 502: "To prove a fact of record without the production of the record itself, a duly authenticated copy of the record or so much thereof as relates to the fact in question is required. Without statutory authority the custodian of a public record may not certify anything less than the entire and literal terms of the original; an official certification of a fact drawn or gathered from a public record is a mere legal conclusion or opinion of the certifying official and is inadmissible, unless its admission

is authorized by statute". See also Jones on Evidence (5th ed.), Vol. 3, §583; McCormick on Evidence §292. Laub in his Trial Guide, §96.1, at page 194, states the rule in like terms, "To show what was officially done, it is not sufficient to produce a public record containing an opinion of someone as to what happened, nor may official action be established by a record showing that such action was contemplated by a certain official or body."

The certificate offered and admitted is no more or less than the opinion of the Director of Enforcement as to what he believes the record to show in certain respects and clearly comes within the above prohibition and therefore is inadmissible. He expressly avers that its content is a conclusion from a "search" of the files and does not purport to be an original record or copy thereof. We find no regulatory or statutory authority to empower such a certificate to be made or to validate it as admissible evidence. Neither the fact of suspension nor failure to reinstate a license can be proved merely by a certification by an official of the Revenue Department. Without the consideration of exhibit C-2, no evidence exists at all to support the continuance of the suspension until and through April 28, 1961, and to negate or explain the apparent contradiction in its own evidence.

At the very least, the admission of exhibit C-2 was highly prejudicial to defendant warranting a new rial. Under the circumstances here, however, the legal result of its inadmissibility is to support the motion in arrest of judgment and, only failing that motion, to warrant a new trial by the prejudicial effect of its wrongful admission.

Defendant also raises the point that the Commonwealth failed to prove notice to defendant of the suspension. The Commonwealth's evidence shows, however, that defendant admitted to the officer of knowing of

the suspension and had turned it over to a lawyer and thought he had taken care of it. If believed, as we must in considering the motion in arrest of judgment, such admission alone would sustain the verdict on this point.

We conclude, therefore, that the Commonwealth did not produce sufficient evidence which, if believed, would have warranted the jury finding defendant guilty of the charge laid in the indictment and the judgment is arrested and defendant is hereby ordered discharged.