**[J-40-2022] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 792 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | March 31, 2021 in the Court of |
| | : | Common Pleas, York County, |
| v. | : | Criminal Division, at No. CP-67-CR- |
| | : | 0004854-2008 |
| | : | |
| HARVE LAMAR JOHNSON, | : | SUBMITTED: May 16, 2022 |
| | : | |
| Appellant | | |

**CONCURRING OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: February 22, 2023**

I join the Majority Opinion except for Section IV.H.4. I concur in the Majority's conclusion that Appellant, Harve Lamar Johnson ("Johnson"), cannot ultimately prevail on his ineffective assistance of counsel claim based on counsel's failure to object to or seek a limiting instruction regarding prior bad acts evidence introduced through the testimony of D.B.'s mother, Neida Baez ("Baez"). However, my reason for reaching this conclusion differs from that of the Majority.

At trial, Baez testified that Johnson frequently abused D.B. in the months prior to the fatal beating that occurred on April 6, 2008. For instance, Baez stated that Johnson struck D.B. with a belt on multiple occasions and that one of those beatings was so severe that it caused D.B. to lose consciousness. N.T., 11/12/2009, at 567-68. Baez also testified that, in separate incidences, Johnson had previously bit D.B.'s fingers, *id.* at 584, and her cheek, *id.* at 588-89. Although Baez indicated that Johnson often struck

D.B. with a belt for discipline, Baez answered "No" when asked if "there were any other methods" Johnson would use to discipline D.B. *Id.* at 568. Baez did not know why Johnson bit D.B. on either occasion. *Id.* at 586, 589.

Johnson alleges that trial counsel was ineffective for failing to object to Baez's prior bad acts testimony detailing his prior abuse of D.B.[1] He contends that this testimony "provided the prosecution with an opportunity to present a misleading picture to the jury that [Johnson] was a criminal and a serial child abuser, while doing nothing to advance its case that [he] had the specific intent to kill [D.B.]." Johnson's Brief at 56. He argues that his trial counsel's failure to object to this "irrelevant" and "inflammatory evidence violated[,]" inter alia, his Sixth Amendment right to the effective assistance of counsel. *Id.* Johnson further maintains that no exception to Pennsylvania Rule of Evidence 404(b)(1)'s ban on prior bad acts evidence applied to Baez's contested testimony and that, because Johnson admitted to abusing D.B. on the day of the fatal beating, "the probative value of any evidence of prior physical discipline or abuse by [Johnson] was outweighed by its prejudicial effect." *Id.* at 57. He contends that trial counsel's failure to object or request an immediate and clear limiting instruction regarding this evidence deprived him of his right to effective assistance of counsel.

The PCRA court agreed with the Commonwealth that there is "no merit" to this ineffectiveness claim because, on direct appeal, this Court "already addressed such prior bad acts as they related to Dr. Ross' testimony on [Johnson]'s prior abuse of the

---

[1] Johnson's ineffectiveness claim also encompasses Baez's testimony regarding additional injuries inflicted upon D.B. from unknown sources in the months prior to April 6, 2008. *See* Johnson's Brief at 56. However, I narrowly focus on those injuries for which Baez specifically incriminated Johnson.

victim and … found that evidence to have been admissible." PCRA Court Opinion at

62.[2] The PCRA court then determined that Baez's testimony regarding Johnson's prior

abuse of D.B. "was admissible to establish, inter alia[,] an absence of mistake or

accident and that its probative value outweighed its prejudicial effect." *Id.* at 62-

---

[2] On direct appeal, Johnson argued that "the trial court erred in permitting [Dr. Ross] to testify [that D.B.] had 70 injuries inflicted prior to the day she was fatally injured[,]" contending that the evidence was "not admissible to show intent, lack of mistake or accident, or other purposes, because there was no evidence he caused these prior injuries, or when or how these injuries occurred." *Commonwealth v. Johnson*, 42 A.3d 1017, 1026 (Pa. 2012). This Court recognized that the trial court had admitted the evidence over Johnson's objection pursuant to Rule 404(b)(2) to show "intent, knowledge, malice, motive, and absence of accident or mistake[,]" and the evidence was also "admissible to show the chain, sequence, or natural development of events forming the history of the case." *Id.* at 1027. However, this Court affirmed on narrower grounds which were not explicitly relied upon by the trial court, ruling the evidence was admissible to show the "relationship" between Johnson and D.B. *Id.* The entirety of the Court's analysis of the claim was as follows:

> Despite [Johnson]'s claims to the contrary, the Commonwealth introduced evidence showing [he] physically punished and hit victim. Indeed, [Johnson] admitted to Sergeant Kohler [that] he hit victim with a belt the day before, *see* N.T. Trial, 11/9/[20]09, at 113, and told detectives he disciplined victim by beating her. These injuries show the nature of the relationship between [Johnson] and victim, specifically, the nature and extent of his physical discipline of victim. Because this evidence was probative to show the developing relationship between [Johnson] and victim, and as the jury already learned [that Johnson] physically disciplined her, the probative value of these injuries outweighed their prejudicial effect. Accordingly, we cannot find the trial court abused its discretion in admitting the pathologist's testimony as to victim's older injuries.

*Id*.

63 (italics omitted).[3]  The court also found that trial counsel had a reasonable basis not to challenge the prior bad acts testimony, in that there could be no substantially greater chance of success obtainable through an alternative strategy because the prior bad acts evidence was admissible.  *Id.* at 63.  Additionally, the PCRA court stated that any undue prejudice was mitigated by a limiting instruction given at the close of trial.  *See* N.T., 11/13/2009, at 772-73.[4]

Johnson's claim that trial counsel provided constitutionally deficient representation requires proof of three elements: (1) that there is arguable merit to the underlying prior bad acts claim; (2) that trial counsel had no reasonable basis for his failure to object to the prior bad acts evidence or his failure to seek a contemporaneous limiting instruction; and (3) that Johnson suffered prejudice from counsel's omissions.

---

[3]  The PCRA court did not state what other reasons supported the admission of prior bad acts evidence through Dr. Ross's testimony on direct appeal.

[4] In its final charge to the jury, the trial court stated:

> You heard during the flow of the case, and I think this came predominately from the medical evaluator, perhaps just Dr. Ross, regarding some evidence of some older injuries that were present on the child as opposed to what he described as … occurring … within the last 24 hours.  [Johnson] is not on trial for any other injuries that the child had from whatever source, whether that was at his hand or the mother's hand.  That was simply given to you as explanation for … the general nature of her condition.  So[,] you may not infer anything adverse to [Johnson] because [D.B.] had some older injuries.  He is on trial and facing solely the circumstances regarding what occurred, and you are to evaluate this case solely on what occurred, on April the 6th[,] and not be influenced by anything else that may have occurred on an earlier date.

N.T., 11/13/2009, at 772-73.

*See Commonwealth v. Hutchinson*, 25 A.3d 277, 285 (Pa. 2011). Here, counsel's failure to challenge the at-issue prior bad acts evidence involves the admissibility of evidence, which "is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion." *Commonwealth v. Sherwood*, 982 A.2d 483, 495 (Pa. 2009). Abuse of discretion is not found "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (citation omitted).

Furthermore, a defendant's prior bad acts are not admissible to establish his or her propensity to commit the crime for which they are on trial. *See* Pa.R.E. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *see also Commonwealth v. Boczkowski*, 846 A.2d 75, 88 (Pa. 2004) (stating "evidence of prior bad acts" is "generally not admissible to prove bad character or criminal propensity"). Nevertheless, Rule 404(b)(2) provides that prior bad acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).[5] However, in a criminal case, evidence of a prior bad act may only

---

[5] This Court has recognized that the "official Comment to Rule 404 explains that this list of exceptions is non-exhaustive[,]" such that "courts are not restricted to the nine exceptions expressly listed in Rule 404(b)(2) when exercising their discretion to permit the admission of evidence of" prior bad acts, "so long as the evidence is used for purposes other than to prove character or a propensity to act in accordance with traits of character." *Commonwealth v. Johnson*, 160 A.3d 127, 144 (Pa. 2017).

be admitted for one of these alternative purposes if its probative value "outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Instantly, the Majority concludes that Baez's testimony describing Johnson's prior abuse of D.B. was admissible under Rule 404(b)(2) to demonstrate: (1) motive; (2) absence of mistake; and/or (3) to show the relationship between Johnson and D.B. Majority Opinion at 59.[6] I fail to see how any of these exceptions apply in the circumstances of this case. Rather, I would instead conclude there was no reason for the prosecution to offer evidence of Johnson's prior abuse of the victim through Baez's testimony other than to impermissibly show Johnson's violent propensity and his conformity to that violent propensity on the date of the tragic final beating that resulted in D.B.'s untimely death.

The Majority first states that the prior bad acts evidence was admissible to show motive but provides no analysis to support that supposition. Reliance on this exception is puzzling as motive was not a Rule 404(b)(2) exception relied upon by the PCRA court in dismissing Johnson's ineffectiveness claim for lack of arguable merit, and the

---

[6] I agree with the Majority's implicit decision not to endorse the PCRA court's law-of-the-case reasoning, which relied on this Court's rationale on direct appeal regarding the prior bad acts evidence heard through Dr. Ross's testimony. Dr. Ross did not identify Johnson as the cause of the older injuries, and it is not clear that the older injuries described by Dr. Ross were the same injuries described by Baez as having been caused by Johnson on prior occasions. Furthermore, Johnson's claim on direct appeal was that no Rule 404(b)(2) exception applied because the Commonwealth failed to establish that he had caused any of the pre-existing injuries described by Dr. Ross. Johnson's ineffectiveness claim is instead directed, at least in part, toward portions of Baez's testimony where Baez had directly observed Johnson's abuse of D.B.

Commonwealth does not argue that this evidence was admissible to show motive.[7]  The only question about motive in this case was raised by Johnson, who claimed he had beaten D.B. as a form of discipline.  Thus, evidence of Johnson's disciplinary motive during prior beatings tended to undermine, not support, the Commonwealth's attempt to prove that Johnson intended to kill D.B., if it had any probative value at all.  In any event, Baez's testimony regarding the biting incidents sheds no light on the veracity of that claim, as Baez proffered no reasons why Johnson bit the child on either occasion, despite identifying other acts of abuse as having been motivated by Johnson's warped sense of discipline.

There was also no question of mistake in this case.  Johnson admitted to beating the victim on the day in question and on prior occasions.[8]  Johnson did not claim to have mistakenly beaten the child.  Neither the Commonwealth, nor the PCRA court, nor this Court during Johnson's direct appeal, ever explained how evidence of Johnson's

---

[7]  The Commonwealth asserts that Baez's testimony regarding Johnson's prior abuse of D.B. was admissible to show Johnson's "relationship with D.B., the absence of mistake or accident when [he] beat her, and to establish malice."  Commonwealth's Brief at 94.

[8]  Although he did not testify, several of Johnson's inculpatory statements were admitted through the testimony of the Commonwealth's witnesses.  Sergeant Roy Kohler testified that, when he encountered Johnson at the scene of the crime, Johnson told him, "I know I'm in trouble because of all the bruises all over her body.  I beat her yesterday pretty bad with a belt."  N.T., 11/9/2009, at 113.  Later that day, when Sergeant Kohler was driving Johnson to the police station, Johnson stated that D.B. and Baez "bruise when touched at all.  If I bite her mother or hit [D.B.] at all, they bruise right up."  *Id.* at 117.  Donald Sanders, Jr., an ambulance supervisor, asked Johnson what had happened, and Johnson replied, "I've been beating her[,]" "I'm sorry, I did it[,]" and "I've been beating her for the last two to three days" with a belt.  *Id.* at 148.  Detective Matthew Luchko interviewed Johnson at the police station.  Johnson told Luchko that he beat D.B. "because she was playing on the stairs."  N.T., 11/12/2009, at 484.  During a taped statement, Johnson told the detective that he did not like to discipline D.B., but that he was worried she would break her neck if she fell down the stairs.  *Id.* at 502.  He also stated that he would beat D.B. as a form of discipline.  *Id.* at 504.

prior abuse of D.B. assisted the Commonwealth to disprove a claim that D.B.'s death was a result of a mistake rather than an intentional killing.[9]   In any event, the devastating array of wounds to D.B.'s small body inflicted in the final beating to which Dr. Ross and other Commonwealth witnesses testified rendered any "mistake" defense facially ridiculous in the circumstances of this case.   Thus, even if there was some probative value to the additional testimony by Baez regarding Johnson's prior abuse of D.B., it was minimally probative at best in the context of the already admissible, inculpatory evidence.

As to the new exception cited by the Majority — "to show the relationship between [Johnson] and [D.B.]" — I am at a total loss to explain what it means or its relevance to the case before us.  Majority Op. at 59.  There was no dispute concerning D.B.'s relationship to Johnson or vice versa.   Johnson was not D.B.'s father; he was Baez's paramour, and the three of them cohabited the apartment where Johnson ultimately killed D.B.  As to the nature of that relationship, Johnson administered severe physical punishment as a form of discipline by his own admissions.  The Majority does not explain the relevance of "relationship" evidence in this case, an omission that unfortunately repeats the talismanic invocation of this newly coined exception by both the Commonwealth and the PCRA court without an iota of substantive justification. Even accepting the ascent of "relationship evidence" into the pantheon of Rule

---

[9]  At one point, Johnson told police that D.B. must have struck her head in the bathtub while he went to retrieve her clothes.  *See* N.T., 11/12/2009, at 486.   However, regardless of the truth of that statement, there is no evidence of record that Johnson ever pursued a theory that an accidental injury in the bathtub had contributed to D.B.'s death, and neither the Commonwealth nor any prior court has proffered the need to refute such a theory as the basis for the admission of any prior bad acts evidence under Rule 404(b)(2)'s accident exception.

404(b)(2)'s exceptions at face value, it has yet to be explained what purpose the prior bad acts evidence served to elucidate further on the relationship between Johnson and D.B. beyond what was already uncontested in this case, nor how that inherently inflammatory evidence assisted the Commonwealth in meeting its burden to prove specific intent to kill at trial.

As best as I can discern, the so-called "relationship" exception, which is not listed in Rule 404(b)(2), originated with a misreading of this Court's decision in *Commonwealth v. Ulatoski*, 371 A.2d 186 (Pa. 1977). Ulatoski claimed his firearm accidentally discharged, killing his wife, and he presented character evidence to establish his peaceful reputation. *Id.* at 188-89. The Commonwealth countered Ulatoski's accident claim with evidence that he had previously abused his wife on multiple occasions. In concluding that the evidence was admissible, the *Ulatoski* Court recognized previous decisions permitting prior bad acts evidence of "previous relations between a defendant and a homicide victim" for the "purpose of proving ill will, motive or malice." *Id.* at 190. My review of those previous decisions fails to show that any of them had invoked the notion of an independent "relationship" exception; rather, they had simply deemed evidence of prior conduct between defendants and their victims as having been relevant in the factual context of each to prove well-recognized exceptions to the prior bad acts ban, such as intent, motive, and/or absence of mistake or accident. *Id.* at 190 n.3 (citing *Commonwealth v. Nelson*, 152 A.2d 913 (Pa. 1959); *Commonwealth v. Peyton*, 62 A.2d 37 (Pa. 1948); *Commonwealth v. Barnak*, 54 A.2d 865 (Pa. 1947); *Commonwealth v. Boden*, 159 A.2d 894 (Pa. 1960); *Commonwealth v. Kravitz*, 161 A.2d 861 (Pa. 1960); *Commonwealth v. Patskin*, 93 A.2d 704 (Pa. 1953);

*Commonwealth v. Delfino*, 102 A. 949 (Pa. 1918)). In *Ulatoski*, the Court found the evidence had "described a pattern of physical abuse" indicating that the defendant and his wife "had a stormy marriage[,]" and the Court concluded that such evidence "was relevant to the determination whether the shooting was **accidental or intentional**." *Id.* at 192 (emphasis added). Thus, although the relationship evidence in *Ulatoski* qualified under an exception to the ban on prior bad acts evidence, it was not for the purpose of proving the nature of the relationship itself, but because the nature of that relationship tended to undermine Ulatoski's claim that he had accidently killed his wife.

Subsequently, relationship evidence appears to have been given a life of its own as a stand-alone exception, perhaps unintentionally so, in *Commonwealth v. Sherwood*, 982 A.2d 483 (Pa. 2009). In that case, Sherwood was accused of beating his four-year-old stepdaughter to death, but he initially denied the abuse and repeatedly claimed that the child victim had been injured in several accidents that had occurred in the days leading up to her death. *Id.* at 487-88. The *Sherwood* Court considered the admissibility of evidence that Sherwood had previously abused the child, concluding that the "challenged prior bad acts were also relevant to show intent, lack of mistake or accident, ill-will, malice, **and** the nature of Appellant's **relationship** with" the victim. *Id.* at 497 (citing *Ulatoski*, 371 A.2d at 190) (emphasis added). However, it is clear from the circumstances in *Sherwood*, as had been true in *Ulatoski*, that an accidental death theory had been advanced by the defense. *Id.* at 490. *Sherwood* cited *Ulatoski*'s reasoning and misinterpreted it as establishing a stand-alone exception for relationship evidence, overlooking that the relationship evidence in *Ulatoski* clearly fell under the rubric of the lack-of-accident exception.

In my view, no applicable exceptions to Rule 404(b)(1)'s ban on prior bad acts evidence applied to Baez's testimony regarding Johnson's prior abuse of D.B. Furthermore, even assuming one or more of the exceptions cited by the Majority applied in some formalistic or theoretical sense, the probative value of the prior bad acts evidence was nevertheless trivial in comparison to its potential prejudice as propensity evidence. Consequently, trial counsel could have had no conceivable reason to refrain from objecting to Baez's testimony regarding Johnson's prior abuse of D.B. or for failing to seek a contemporaneous cautionary instruction for the jury.[10]

Nevertheless, Johnson's statements to first responders and police constituted admissions to his prior beatings of D.B., and to the brutal beating that directly led to her death. Additionally, an overwhelming amount of evidence was admitted at trial, most significantly through Dr. Ross's testimony, describing in detail the myriad of internal and external injuries inflicted upon D.B.'s tiny body. That evidence was extremely disturbing by its very nature, yet properly admitted for legitimate purposes under the rules of evidence. Consequently, I believe the inadmissible and inflammatory prior bad acts evidence admitted through Baez's testimony pales in comparison to the disturbing-but-properly-admitted evidence, so much so that I cannot imagine that it contributed significantly to the jury's verdict in the unique circumstances of this case. Consequently, Johnson cannot prove that he suffered outcome-determinative prejudice

---

[10] In *Commonwealth v. Billa*, 555 A.2d 835 (Pa. 1989), this Court recognized that when an exception to the ban on prior bad acts evidence applies, a defendant is "**entitled** to a limiting instruction on the use that the jury could make of the challenged evidence which was admissible only for a limited purpose." *Billa*, 555 A.2d at 842 (emphasis in original). Consequently, the *Billa* Court held that a failure to request an appropriate limiting instruction, despite a contemporaneous objection to the admission of prior bad acts evidence, constituted "constitutionally ineffective" representation. *Id.* at 843.

as is required to prove the prejudice prong of his ineffective assistance of counsel claim. Thus, I concur with the Majority that Johnson is not entitled to relief. *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) (stating that the failure "to prove any prong" of the ineffective assistance of counsel test will defeat the claim).

I have previously expressed my views on the limited circumstances in which prior bad acts evidence should be admitted. *See Commonwealth v. Hicks*, 156 A.3d 1114, 1143 (Pa. 2017) (Donohue, J., dissenting) ("Bad act evidence is admissible if 1) a logical connection exists between the bad acts and the crime on trial, linking them together for some purpose the defendant intended to accomplish, or 2) the bad acts evince a signature crime."). While my view has not been adopted, the Majority's rote recitation of exceptions to Rule 404(b)(1) to bless the use of prior bad acts evidence in this case goes beyond the outer limits of any Rule 404(b)(2) analysis previously condoned by this Court. More troubling, it encourages prosecutors to use improper evidence under a distorted and ever-expanding view of Rule 404(b)(2) that we too often see from our trial and intermediate appellate courts.

Accordingly, I cannot join the Majority's rationale for denying relief under Section IV.H.4 of the Majority Opinion. However, because I conclude that Johnson would still not be entitled to relief due to his inability to show that the result of his trial would have been different but for trial counsel's failure to object or seek a limiting instruction regarding the prior bad acts testimony by Baez, I concur in the result reached by the Majority on this issue.

Justice Wecht joins this concurring opinion.