## Commonwealth v. Dankel

*George J. Joseph*, District Attorney, for Commonwealth.

*William H. Platt* and *John E. Roberts*, Assistant Public Defenders, for defendant.

DAVISON, J., June 5, 1973.—Defendant, James B. Dankel, was convicted by a jury of murder in the first degree and sentenced to life imprisonment. On March

16, 1973, the Pennsylvania Supreme Court reversed the conviction and ordered a new trial: Commonwealth v. Dankel, 450 Pa. 437, 301 A.2d 365 (1973). The new trial is scheduled to commence June 11, 1973. Defendant filed an application for bail upon which a hearing was held on May 31, 1973.

The issue presented is whether one whose conviction of first degree murder and sentence of life imprisonment is set aside is entitled to bail prior to the new trial where, as here, the new trial has been promptly scheduled to begin June 11, 1973. Counsel has not called to our attention nor has our own independent research revealed any appellate court decision in the Commonwealth of Pennsylvania which has specifically ruled on the precise question before us.

Authority for release on bail within the Commonwealth of Pennsylvania is found in article I, secs. 13 and 14, of the Pennsylvania Constitution, and the latter section provides the following with respect to bailable offenses:

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or presumption great . . ."

In Commonwealth ex rel. Alberti v. Boyle, 412 Pa. 398, 195 A.2d 97 (1963), the court defined a capital offense to be one for which the penalty or sentence of death *may*, but need not, be imposed. However, with the advent of the decisions of the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972), and Commonwealth v. Scoleri, 408 U.S. 934, 92 S. Ct. 2852, 33 L.Ed. 2d 747 (1972), as well as Commonwealth v. Bradley, 449 Pa. 19, 295 A.2d 842 (1972), it appears there are no remaining "capital offenses" presently existing in Pennsylvania: Commonwealth v. Williams, 35 Lehigh 180 (decided January 31, 1973).

Late in 1972, the Pennsylvania Supreme Court, in Commonwealth v. Truesdale, 449 Pa. 325, 296 A.2d 829 (1972), held that all offenses are bailable *prior* to trial. In ruling that the fact that the accused was awaiting trial on a charge of murder in the first degree did not preclude his release on bail pending trial in the absence of evidence that the person charged would flee regardless of the character or the amount of the bail, Justice Eagen stated:

"We do not intend by this opinion that pretrial bail may not be denied regardless of the circumstances. As noted before, the right to release before trial is conditioned upon the accused giving adequate assurance he or she will appear for trial. If upon proof shown, the court reasonably concludes the accused will not appear for trial regardless of the character or the amount of the bail, then in such an instance bail may properly be denied, regardless of the nature of the charges. The burden of proof is upon the. Commonwealth. This decision must be reached by the application of certain criteria, such as: (1) general reputation in the community; (2) past record; (3) past conduct while on bail; (4) ties to the community in the form of a job, family, or wealth."

Importantly, then, while Truesdale as well as Pennsylvania Rule of Criminal Procedure 4004, recognize the *right* to bail for one accused of committing first degree murder, there is no *mandatory requirement* that bail actually be allowed.

An analysis of the previously cited cases together with the very recent decision of Commonwealth v. Fowler, 451 Pa. 505, 304 A.2d 124 (decided May 4, 1973), and the opinion of the court in the Dankel appeal provide guidance with respect to the disposition of this case.

Fowler held that bail need not be granted to one con-

victed of murder in the first degree between the entry of the verdict and the imposition of formal sentence, unless post-trial proceedings are not disposed of and defendant is not sentenced within four months, in which latter event he may apply for bail. The court said:

"We therefore hold if post-trial proceedings in a case of first degree murder are not disposed of and the defendant is not sentenced within the stated four-month period, he may then apply for bail. If the trial judge is convinced at that juncture that the defendant neither caused nor consented to the delay, and has provided reasonable assurance against flight, bail may be granted."

Significantly, the court itself stated that its ruling was not founded upon a constitutional premise but rather constituted an exercise of its supervisory powers.

In the case at bar, defense counsel argue that since the conviction has been reversed, the status of defendant is precisely the same as one accused of first degree murder but not yet brought to trial, that is, that defendant, under Truesdale, is entitled to bail. We do not agree that we are necessarily forced to that conclusion. Assuming, arguendo, the validity of the general proposition that one whose conviction has been reversed stands in the same shoes of one who has not yet been convicted, we are not persuaded, after reviewing the opinion of the Supreme Court setting aside the conviction in this case, that that proposition necessarily applies here. The language of Justice Eagen's opinion leads us to conclude that the reversal of Dankel's conviction was predicated upon the admission into evidence at trial of certain photographs which were held to be inflammatory and without essential evidentiary value. Indeed, the following excerpts from the court's opinion indicate that the appeal did not

even raise the question of the sufficiency of the evidence:

"It is not asserted that the trial evidence was insufficient to establish Dankel aided and abetted in the perpetration of the burglary, but it is urged that since Dankel did not participate in killing Kramlich and never entered into any plan contemplating such a crime, the trial court erred 'in permitting the felony-murder rule to be applied under these facts.' This contention was fully answered recently in Commonwealth v. Yuknavich, 448 Pa. 502, 295 A.2d 290 (1972), and need not be further considered here.

"The commission of the burglary was undisputed. Moreover, it was firmly established through the testimony of Newhart, Elliot and other Commonwealth witnesses. The only dispute was whether Dankel aided in the perpetration of the burglary and the photographs had no essential evidentiary value in resolving this issue."

Quite aside from the de novo argument, however, and applying only the Truesdale criteria, we are not convinced that bail should be set in this instance, because we are not satisfied that the evidence demonstrates that defendant's future appearance can be assured by bail: Commonwealth v. Williams, supra. To permit defendant to locate witnesses whom he hopes may assist him at trial is not, in itself, justification for permitting bail. Although still a young man at age 26, defendant has been involved in criminal activity dating back to 1964, when, by his own admission, at the evidentiary hearing on the application for bail, he was convicted of larceny in one of the Carolinas. Moreover, defendant's proof of his family ties, which consisted almost solely of his own testimony (he did not present the testimony of either parent), failed to satisfy the court that there would be an adequate deterrent

to flight. His reported invitation to apply for a job at a nearby drive-in restaurant likewise falls short of what we believe should constitute the desired continuity of ties to this community.

While diligently safeguarding the rights of those accused of crime, we must not overlook nor be unmindful of the rights of the public and the protection of society as well. In this respect, the following language in Fowler is significant:

"One convicted of first degree murder has committed the most severe breach of the law of this Commonwealth and is therefore subject to our most severe penalty. To ignore the strong possibility of flight for one in such a position would be a blatant illustration of ignoring reality. To minimize the potential danger that his freedom would cause to society in general and to the witnesses who brought about his conviction in particular would be the height of judicial irresponsibility. The punishment of life imprisonment, which is mandatory, by its very nature renders a monetary bail ineffective and no responsible alternative condition of release has been suggested that can reasonably meet the problems his discharge from confinement would create."

Consequently, and by analogy to Justice Nix in Fowler, we conclude that while Truesdale permits bail prior to trial, it does not go so far as to require the same result during that interval between reversal and a speedily scheduled retrial.

## ORDER

Now, June 5, 1973, it is ordered that defendant's application for bail be and the same is hereby dismissed.