Commonwealth *v.* James, Appellant.

Argued January 15, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*A. Benjamin Johnson, Jr.,* for appellant.

*Edward G. Rendell,* Assistant District Attorney, with him *James D. Crawford,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 23, 1969:

Appellant and decedent emerged from a bar and engaged in an altercation during which the deceased was fatally stabbed by appellant. Appellant claimed self-defense. The jury found her not guilty of murder but guilty of voluntary manslaughter and appellant took this appeal.

Appellant contended at trial that she stabbed the deceased only after he had beaten her. In attempting to establish his assaultive tendencies, she testified that on two prior occasions the deceased had attacked and beaten her. On cross-examination, the Commonwealth asked appellant whether she had stabbed the deceased three weeks before his death. Appellant's objection was overruled, and she now claims that the question violated the Act of March 15, 1911, P. L. 20, §1, 19 P.S. 711, which forbids asking a criminal defendant "any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation," unless he first puts his own character or reputation in issue. See, e.g., *Commonwealth v. Smith*, 432 Pa. 517, 248 A. 2d 24 (1968).

Even assuming arguendo that appellant is correct in contending that the Act of 1911 bars asking a question about a prior act for which there has been no arrest or conviction, this case still falls without the act's coverage. The Act of 1911 "was intended merely to prevent blackening a defendant's reputation or attempting to prove a disposition to commit crime, but if there is another legitimate purpose . . . the Act of 1911 does not prohibit the Commonwealth from such interrogation . . . ." *Commonwealth v. Heller*, 369 Pa. 457, 463, 87 A. 2d 287, 289-90 (1952). In the *Heller* case, the questioning was used not merely to impeach defendant's credibility but to establish motive, a substantive element of the Commonwealth's case. The same is true here, where the Commonwealth was attempting to prove by past behavior who was more likely to have been the aggressor, a crucial inquiry where appellant is claiming self-defense.

In attempting to establish self-defense, *appellant herself* put in issue the past relationship of the parties.

Her aim, of course, was to establish that she had acted reasonably in protecting herself. Thus had decedent inflicted beatings on appellant in the past, she might have been justified in using deadly force to protect herself in the present case. The Commonwealth's inquiry was merely an attempt to rebut part of appellant's substantive case by establishing that she, not decedent, had been the aggressor in the past. The Act of 1911 was not intended to prevent the Commonwealth from rebutting or disproving part of the *substantive defense* which appellant had already tried to advance.

Appellant next contends that it was error for the court below to allow a pathologist to read into evidence the report of a toxicologist which indicated that the deceased was intoxicated at the time of his death. Appellant claims that this was hearsay and not within the Business Records Act, Act of May 4, 1939, P. L. 42, 28 P.S. §91a, and in any event, that it violated the confrontation clause of the sixth amendment. We need not decide these questions, however, since we can find no way in which appellant possibly could have been prejudiced by the admission of the toxicologist's report. It is hard to see for exactly what purpose the Commonwealth introduced this evidence. Evidence of the deceased's intoxication would if anything at all seem to support appellant's self-defense claim, and appellant certainly was not harmed by its use.

Finally appellant challenges the jury charge as to self-defense. The judge told the jury that "to justify a homicide as committed in self-defense, there must be an actual imminent peril of life, or, of great bodily harm, or a reasonable belief founded on facts as they appear at the time of such imminent peril or great bodily harm. In addition, there must be no other means of escape if the alleged attack takes place in the street, as alleged in this case." This charge was

perfectly clear and properly stated the law. See *Commonwealth v. Collazo*, 407 Pa. 494, 180 A. 2d 903 (1962) ; *Commonwealth v. Vassar*, 370 Pa. 551, 88 A. 2d 725 (1952) ; *Commonwealth v. Drum*, 58 Pa. 9 (1868).

The judgment of the Court of Oyer and Terminer of Philadelphia County is affirmed.

Mr. Justice EAGEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I cannot subscribe to the majority's interpretation of the Act of 1911.[1] That Act forbids asking a criminal defendant "any question tending to show that he has *committed*, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation," (emphasis added) unless he first puts his own character or reputation in issue. To this one exception, the majority by judicial legislation adds another—unless the defendant claims self-defense. In that situation the majority would allow the Commonwealth "to prove by past behavior who was more likely to have been the aggressor." This is the very evil which the statute is designed to prevent. In fact, *Commonwealth v. Heller*, 369 Pa. 457, 87 A. 2d 287 (1952), upon which the majority relies, far from supporting the majority's position, actually destroys it. *Heller* states, at page 463, that the purpose of the Act is "to prevent blackening a defendant's reputation or attempting to prove a disposition to commit crime." The fact that in *Heller* the Commonwealth was permitted to cross-examine as to a crime, adultery, in order to show motive, in no way supports allowing the Commonwealth in the instant case to cross-examine

---

[1] Act of March 15, 1911, P. L. 20, §1, 19 P.S. §711.

"to prove by past behavior who was more likely to have been the aggressor." The majority is thus allowing the Commonwealth "to prove a disposition to commit crime", which *Heller* tells us is the very proscription of the statute.

Moreover, even if this line of questioning would in some instances be permissible, surely the instant case is not one of them. When the Commonwealth asked appellant whether she had stabbed the decedent three weeks prior to his death, appellant's counsel objected, asked that the question be stricken, and moved for the withdrawal of a juror. A conference in chambers then took place as follows: "THE COURT: I will overrule your motion for the withdrawal of a juror. MR. JOHNSON: If your Honor please, inasmuch as you have overruled my motion for the withdrawal of a juror, I specifically request your Honor at this time and in your final charge to the jury, to specifically instruct them to ignore the question and the answer, that they have nothing to do with this case, that it has no bearing, that there is no testimony that anything of this event ever occurred, and they should not consider it in their deliberations. THE COURT: This is cross-examination, and the prior conduct of the parties certainly is in issue—their entire relationship, which you, yourself, in direct examination have tried to elicit, and which the District Attorney has a right to establish it was not always as good as she has tried to present. And furthermore, if by competent evidence the District Attorney can prove that she did in fact cut him, he may—by competent evidence. MR. JOHNSON: Your Honor then denies my request for the instructions? THE COURT: Yes, I do. MR. JOHNSON: Very well." Still assuming that in a proper case this sort of question may be asked, I could not fault the trial judge for not granting the motion to strike *at this point*. However,

514

when the Commonwealth declined the court's obvious invitation to follow up the question with some sort of concrete evidence, the court abused its discretion in failing to charge the jury to ignore this highly prejudicial question. Compare Wigmore, 3d Ed., Vol. III, §983. It should have been apparent at this point that the Commonwealth was either trying to besmirch appellant's reputation by the question alone or was on an impermissible fishing expedition. By contrast, in *Heller*, the Commonwealth called as a witness Heller's sister-in-law, who actually testified as to Heller's adultery with her. Thus, even if the Act of 1911 permitted the Commonwealth's questioning in the instant case, basic notions of fairness in the examination of witnesses forbade it.

I dissent.

Mr. Justice COHEN joins in this dissenting opinion.