Commonwealth *v.* Reid, Appellant.

Submitted May 22, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Smith B. Gephart* and *James R. Clippinger,* Assistant Public Defenders, for appellant.

*Marion E. MacIntyre,* Deputy District Attorney, and *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, June 30, 1972:

Samuel McDaniel Reid received a sentence of life imprisonment after his first degree murder conviction by a jury. The only point raised in this appeal is the sufficiency of the evidence to sustain the jury's verdict of first degree murder. We have reviewed the evidence contained in the record and conclude that there was sufficient evidence to sustain the jury's verdict.

The victim of the murder, LeRoy S. Shank, a milkman, was making deliveries on the thirteenth floor of the Jackson Apartment Building, Harrisburg, Pennsylvania. While making a delivery to Apartment No. 248, Shank was attacked and severely beaten about the head with a weapon later described as a hatchet. This incident occurred on January 12, 1971, and as a result of the beating Shank died on March 4, 1971, some fifty-three (53) days later. An investigation of the incident

led to the arrest and conviction of the appellant, Samuel McDaniel Reid.

Mary Simmons and Sharon Knight both witnessed the attack on Shank and testified.

Mary Simmons who lived at 251 Jackson Apartments on the thirteenth floor, testified for the Commonwealth and was also called as a witness for the appellant. During her direct examination by the Commonwealth she testified she heard a noise outside her apartment and when she opened the door to investigate she observed the milkman being "stomped" and beaten with a hatchet. She was not able to identify the attacker because he had a pillowcase over his head, but she did testify that his general build was skinny or slender. Mary Simmons was later called as a defense witness and testified that Reid was not built like the individual she observed beating the milkman, although Reid has a slender or skinny build. The appellant properly points out that the testimony of Mary Simmons was of no value in tying appellant into the crime.

The testimony of Sharon Knight did specifically implicate the appellant. Sharon Knight testified on direct examination, that on the morning of January 12, 1971, while the milkman was making a delivery to her apartment, a man appeared behind the milkman and ordered him not to move and not to turn around. She further testified that the milkman and the other man started fighting. During the fight the assailant said "you think you're bad". She observed the assailant then pull out a hatchet and strike the milkman on the head. She stated that she had known the appellant, Reid, for more than five (5) years and was able to recognize him as the attacker by his voice, build, dress and mannerisms. She was not able to see his face because his head was covered by a pillowcase. Mrs. Knight further testified that Reid was at her apart-

ment on Sunday, January 10, 1971, and when he overheard Mrs. Knight's sister talking about the milkman's January 12, delivery, he asked if the milkman carried any money. She also testified that about a week after the incident she received a telephone call from Reid, whose voice she recognized. He threatened that if she told anyone he had done it, he would tell the authorities she was the one who arranged the attack. Lastly on direct examination, she stated that she failed to identify Reid during the preliminary hearing because she was frightened.

On cross-examination Mrs. Knight admitted that when she was first questioned by the police she was uncertain as to whether the voice she had heard was Reid's, but that after questioning by the police she became positive that Reid's voice was the voice of the attacker.

On redirect she again testified that she was now certain that it was Reid's voice she heard on the morning of January 12.

Because of these prior failures of Mrs. Knight to identify him, Reid now asks this court to reverse the lower court's finding of guilty.

It is proper for a witness to identify another person by voice alone. *Commonwealth v. Marino,* 213 Pa. Superior Ct. 88, 245 A. 2d 868 (1968), affirmed 435 Pa. 245, 255 A. 2d 911 (1969); *Commonwealth v. Johnson,* 201 Pa. Superior Ct. 448, 193 A. 2d 833 (1963).

Appellant recognizes voice identification is valid, but points out that when, as in this case, the identity is weakened by a prior failure to identify, the court should warn the jury that the identification testimony must be received with caution. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A. 2d 820 (1954). In this case the trial judge fulfilled this requirement by pointing out in his charge to the jury that Mrs. Knight was,

292

on several occasions unsure of her identification and, therefore, the jury should receive her testimony with caution. With the proper instruction given, the jury was free to accept as true all, part of, or none of the testimony presented by the witnesses. *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A. 2d 108 (1970).

Once a verdict of guilty is returned, the test the appellate court applies in determining the sufficiency of the evidence is whether, accepting as true all of the evidence favorable to the prosecution, that evidence is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime of which he has been convicted. *Commonwealth v. Malone,* 444 Pa. 397, 281 A. 2d 866 (1971). We have examined the record and find the evidence sufficient.

Judgment affirmed.