Commonwealth *v.* Dankel, Appellant.

Argued November 21, 1972. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Malcolm J. Gross,* Assistant Public Defender, with him *Robert E. Donatelli,* Assistant Public Defender, for appellant.

*Richard J. Makoul,* Assistant District Attorney, with him *George J. Joseph,* District Attorney, for Commonwealth, appellee.

438

OPINION BY MR. JUSTICE EAGEN, March 16, 1973:

The appellant, James B. Dankel, following his conviction by a jury of murder in the first degree was sentenced to life imprisonment as the jury directed. From the judgment of sentence, this appeal was filed.[1]

The factual background is this:

In the early morning hours of October 27, 1969, a James Newhart and a Charles Phillips broke into the residence of Harry Kramlich in Allentown, Lehigh County, through a second-story window. The two then proceeded to a first-floor bedroom where they bound and gagged Kramlich and placed an ammonia soaked rag over his face. Kramlich died from a respiratory insufficiency as a result of the inhalation of the ammonia.

Residents of a nearby house were awakened by the noise of the scuffle and alerted the police. Newhart was taken into police custody immediately, in an alley to the rear of the Kramlich property. Dankel, the appellant, was arrested about one and a half blocks from the scene as he stopped his automobile at a traffic light. Frank Elliot and Charles Phillips were later arrested and all four were charged with the burglary and murder.

Newhart and Elliot were witnesses for the Commonwealth at trial and, in relevant part, they both testified that during several conferences in which Dankel and Phillips participated plans for the burglary were discussed and agreed upon; that on the night of October 26th and the early morning hours of the 27th, the four drove around Allentown in an automobile owned and operated by Dankel and picked up certain items, including ammonia and a ladder, to be used in perpetrating the burglary; that the four then drove to the

---

[1] Dankel was also convicted of burglary but sentence was not passed on this conviction.

Kramlich address in Dankel's automobile where New-
hart and Phillips alighted and proceeded to carry out
the burglary; that Elliot remained in the rear yard to
serve as a lookout and Dankel waited in his automobile
on a nearby street to drive the conspirators from the
scene after the burglary was completed. However, they
admitted before proceeding to the Kramlich residence,
Dankel stated two or three times he "didn't want to get
involved in this thing."

It is not asserted that the trial evidence was insuf-
ficient to establish Dankel aided and abetted in the
perpetration of the burglary,[2] but it is urged that since
Dankel did not participate in killing Kramlich and
never entered into any plan contemplating such a
crime, the trial court erred "in permitting the felony-
murder rule to be applied under these facts." This con-
tention was fully answered recently in *Commonwealth
v. Yuknavich*, 448 Pa. 502, 295 A. 2d 290 (1972), and
need not be further considered here.[3]

---

[2] Testifying at trial, however, Dankel denied aiding in the bur-
glary. He said he was unaware of the plans for the burglary; that
he drove Newhart, Phillips and Elliot to the Kramlich residence
thinking they were going to smuggle a woman out of the house, and
because he feared they would damage his automobile which they
threatened to do if he refused; that after the others alighted from
his vehicle he drove away and went to a restaurant; that later
while en route to his mother's residence he heard a shot, became
curious and drove back towards the Kramlich residence and was
arrested.

[3] In *Yuknavich*, we pertinently stated: "This Court has con-
sistently held that the killing need not be by the defendant in a
felony-murder case. It has been established 'that in order to con-
vict for felony-murder, *the killing must have been done by the de-
fendant or by an accomplice or confederate or by one acting in fur-
therance of the felonious undertaking.*' Commonwealth v. Redline,
391 Pa. 486, 496, 137 A. 2d 472, 476 (1958) ; accord, Commonwealth
v. Sampson, 445 Pa. 558, 563, 285 A. 2d 480, 483 (1971) ; Common-
wealth v. Moore, 443 Pa. 364, 374, 279 A. 2d 179, 185 (1971) ; Com-
monwealth v. Williams, 443 Pa. 85, 88, 277 A. 2d 781, 783 (1971) ;

It is also asserted the trial court committed prejudicial error in permitting the Commonwealth to introduce certain photographic evidence at trial over objection. With this, we are compelled to agree.

The Commonwealth offered in evidence a series of photographs to which the court initially sustained a defense objection, but latter reversed its ruling and permitted the offer. Two of these photographs showed the body of Kramlich as it was found by the police lying on the bed bound and gagged in the room where the fatal assault occurred. Three others taken from different angles showed the body lying on the bed, but freed from the binds and gag. Another showed the body in the morgue. All of the four last mentioned photographs depicted in greater or lesser degree the burns on the face caused by the ammonia. All of the photographs under discussion were exhibited to the jury at close range on two separate occasions.[4] Two of the photographs depicted in sharp detail the eroded area of the victim's face, and at least one such was a ghastly exhibit. Taking into consideration the makeup of the average jury, it is our conclusion that these photographs would very likely inflame their minds and passions. Moreover, in this, a felony-murder case, these photographs were of no essential evidentiary value. Cf. *Commonwealth v. Powell*, 428 Pa. 275, 241 A. 2d 119 (1968).

---

Commonwealth ex rel. Smith v. Myers, 438 Pa. 218, 228, 261 A. 2d 550, 555 (1970) ; Commonwealth v. Batley, 436 Pa. 377, 390, 260 A. 2d 793, 800 (1970). Clearly where a killing occurs in the commission of a felony, all who participate therein are equally guilty of murder." Id. at 507, 295 A. 2d at 293.

[4] In his summation the district attorney displayed the photographs to the jury and said, "this is what ammonia does to a human being." Moreover, although the record is unclear, the remarks of the district attorney during summation would indicate the photographs were sent out with the jury.

The Commonwealth contends the photographs were properly admitted, because they aided in establishing the commission of a felony. What this argument overlooks is that because of the gruesome nature of certain of the exhibits, it was also necessary that the photographs have *essential* evidential value and this requirement was totally absent here.

The commission of the burglary was undisputed. Moreover, it was firmly established through the testimony of Newhart, Elliot and other Commonwealth witnesses. The only dispute was whether Dankel aided in the perpetration of the burglary and the photographs had no essential evidentiary value in resolving this issue.

The non-essentiality of these photographs is further manifested by the witnesses who testified from these exhibits at trial, and the nature of the testimony elicited. The photographs were not used in connection with the testimony of the pathologist as to the cause of death, but were utilized by the Commonwealth to aid in the testimony of two police officers and that of Newhart, a co-felon. After describing in detail the conditions they observed in the Kramlich bedroom, the officers were then shown the photographs by the district attorney and asked if this is what the crime scene looked like. After Newhart had testified to the circumstances of the burglary and the assault upon Kramlich, he was then shown the photographs by the district attorney and asked, "James, what do these photographs show?" Newhart responded by saying they showed the old man all bound up. The essential evidentiary value of this testimony escapes us.

While the admission of photographs is largely within the discretion of the trial court, this discretion was abused in this case. Additionally, the error was compounded by the absence of cautionary instructions to

the jury. Cf. *Commonwealth v. Robinson*, 433 Pa. 88, 249 A. 2d 536 (1969).

Judgment reversed and new trial ordered.

Mr. Justice MANDERINO concurs in the result.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.