329 A.2d 844
COMMONWEALTH of Pennsylvania
v.
William PETRAKOVICH, Appellant.

Supreme Court of Pennsylvania.
Submitted Jan. 8, 1974.
Decided Dec. 5, 1974.

512

514

Frederick J. Lanshe, Public Defender, Allentown, for appellant.

George J. Joseph, Dist. Atty., Howard R. Miller, Asst. Dist. Atty., Allentown, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

■ Appellant, William Petrakovich, charged with the murder of his wife, was tried before a jury and convicted of murder in the first degree. Upon denial of post-trial motions, a sentence of life imprisonment was imposed. This direct appeal followed.[1] We have consid-

---

1. Appellant was also convicted of carrying a concealed deadly weapon and carrying a firearm without a license. The Superior

ered each of appellant's arguments and, for the reasons set forth below, affirm the judgments of sentence.[2]

## I. Sufficiency of the Evidence

■■ Appellant first contends that the evidence is insufficient to support a verdict of murder in the first degree. As we have said many times, our scope of review as an appellate court is limited to determining "whether, accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Carbonetto,* 455 Pa. 93, 95, 314 A.2d 304, 305 (1974) *citing Commonwealth v. Clark,* 454 Pa. 329, 311 A.2d 910 (1973); *Commonwealth v. Bayard,* 453 Pa. 506, 309 A.2d 579 (1973). Of course, because the prosecution prevailed in the trial court, the record must be viewed in the light most favorable to the Commonwealth. *Commonwealth v. Rife,* 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Cimaszewski,* 447 Pa. 141, 288 A.2d 805 (1972); *Commonwealth v. Gray,* 441 Pa. 91, 271 A.2d 486 (1970).

Court certified to us the appeal at No. 513, which challenges those convictions, in order that it be considered with the direct appeal to this Court at No. 480. Appellant Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. V, § 503(c), 17 P.S. § 211.503(c) (Supp.1974). In the appeal at No. 513, appellant contends that the evidence was insufficient to sustain the convictions for the two firearms offenses. Upon a review of the record, however, we cannot agree. The other issues raised in the appeal at No. 513 are included also in the appeal at No. 480, and are considered in this opinion without separate identification.

2. The District Attorney for Lehigh County, although several times requested to do so, has not filed a brief on behalf of the Commonwealth in this Court. We reiterate our censure of such failure as recently expressed in *Commonwealth v. Diana,* 455 Pa. 267, 269 n.*, 314 A.2d 262, 263 n.* (1974). The District Attorney, like any other attorney, has an affirmative obligation to provide his client with zealous representation, and to assist the Court in reaching sound and just results.

With these standards in mind, we turn to a review of the rather bizarre set of facts disclosed by the record.

Appellant and Rochelle Petrakovich were married in September, 1970 and resided near Allentown, Pennsylvania. Both had been previously married and divorced and had lost custody of their respective children of those prior marriages. In May, 1971, appellant and his wife moved to Arizona where they lived for several months. In October of that year, Mrs. Petrakovich returned to Allentown and obtained employment at the Top Diner, where she had previously worked. On January 12, 1972, appellant appeared at the Diner, spotted his wife behind the lunch counter, and accosted her. The prosecution version of what then transpired, as presented through three eye-witnesses, was as follows: Appellant leaned over the counter and pushed his wife against a refrigeration unit which was several feet behind her. Mrs. Petrakovich, seeming startled, moved towards the counter and apparently spoke with her husband for one or two minutes. No witness could testify as to the content of this conversation. Appellant then drew a gun and fired it at his wife; she screamed, clutched her left arm, and fell to the floor. Still holding the gun, appellant leaped over the counter and warned the other employees and patrons not to move or call the police. He then bent over his wife and said "I love you, Shel." After another warning to an employee who attempted to come to the injured woman's aid, appellant again professed his love to his wife and fired a second shot into her chest. He then shot himself in the chest and fell upon his wife's body. The police and an ambulance were then called. Mrs. Petrakovich died before arrival at a hospital.

Taking the stand in his own behalf, appellant recounted a very different version of the facts, and denied that he had shot his wife. He stated that life for him and his wife had been extremely difficult immediately after their

marriage due to the loss of custody of their children. It was to escape that painful situation that they had moved to Arizona; but in a final attempt to regain her children, Mrs. Petrakovich returned to Allentown. On December 31, 1971, she telephoned appellant and asked him to join her and to meet her at the Top Diner at 11:00 a.m., January 12, 1972. Upon arriving at the Diner at the appointed time, appellant saw his wife at work behind the counter, approached her and, placing his hands on her shoulders, kissed her. After some general conversation, Mrs. Petrakovich told him that her efforts to win her children had been unsuccessful. Suddenly, appellant heard her scream and saw that she had shot herself with the family gun which she had brought from Arizona. He jumped over the counter and took from her the gun which, in the process, discharged accidentally, and his wife fell to the floor. As he knelt over her, telling her that he loved her, she asked him to "go with her." Wishing to join her in death, he shot himself in the chest.

██ One of the fundamental responsibilities of a jury is to choose between competing versions of the facts. *Commonwealth v. Bayard, supra* 453 Pa. at 509, 309 A. 2d at 581. We have repeatedly held that a jury may properly accept or reject all or any part of a defendant's testimony. *Commonwealth v. Oates*, 448 Pa. 486, 295 A. 2d 337 (1972); *Commonwealth v. Reid*, 448 Pa. 288, 292 A.2d 297 (1972); *Commonwealth v. Ewing*, 439 Pa. 88, 264 A.2d 661 (1970). The resolution of discrepancies between the evidence presented by the defendant and that of the Commonwealth is a matter of credibility, and, therefore, within the province of the jury. *Commonwealth v. Oates, supra* 448 Pa. at 490, 295 A.2d at 339.

 Here, the jury obviously accepted the version of the facts presented by the Commonwealth's witnesses, and we are satisfied that that testimony was sufficient to warrant a verdict of murder in the first degree. A

key element in the offense of murder in the first degree is, of course, the specific intent to kill. According to the Commonwealth's evidence, the appellant shot twice into the body of his wife, once into her chest. It is settled that the specific intent to kill may be inferred from the use of a deadly weapon upon the vital part of the body of another. *Commonwealth v. Mosley*, 444 Pa. 134, 279 A. 2d 174 (1971); *Commonwealth v. Hornberger*, 441 Pa. 57, 270 A.2d 195 (1970); *Commonwealth v. Commander*, 436 Pa. 532, 260 A.2d 773 (1970).

▮ Appellant argues, however, that there was a discrepancy between one aspect of the testimony of a Commonwealth witness and the physical evidence, and that this inconsistency renders the evidence insufficient to support the verdict. The Commonwealth witness testified that when the shot which entered the arm of the deceased was fired, appellant was standing "directly in front of" her. The evidence showed that the bullet which entered the victim's left arm passed into the left chest and finally lodged in the right side of the abdomen at the back of the body. This would arguably indicate that the bullet entered the body at an angle, not from "directly in front" of the decedent. Such a variance, however, is one which goes to credibility rather than sufficiency. *See Commonwealth v. Osborne*, 433 Pa. 297, 249 A.2d 330 (1969). Through cross-examination, appellant made the jury fully aware of this discrepancy. The jury resolved it in favor of the Commonwealth, and this it was entitled to do.

## II. Admissibility of Photographic Evidence

The trial judge admitted into evidence, over appellant's objection, three photographs of the nude upper torso of the body of the deceased.[3] Appellant contends that

---

3. The photographs were black and white glossy prints, 8″ x 10″. One picture shows the upper half of the body covered by the

these photographs were not only inflammatory but also irrelevant, since a forensic pathologist had testified fully as to the range and angle from which each bullet had entered the body and its course through the body.

We have consistently held that the question of admissibility of photographs of a corpse in homicide cases is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error. *Commonwealth v. Woods,* 454 Pa. 250, 311 A.2d 582 (1973); *Commonwealth v. Sullivan,* 446 Pa. 419, 286 A.2d 898 (1971) (opinion in support of order); *Commonwealth v. Chasten,* 443 Pa. 29, 275 A.2d 305 (1971); *Commonwealth v. Robinson,* 433 Pa. 88, 249 A.2d 536 (1969); *Commonwealth v. Powell,* 428 Pa. 275, 241 A.2d 119 (1968); *Commonwealth v. Novak,* 395 Pa. 199, 150 A.2d 102 (1959); *Commonwealth v. Peyton,* 360 Pa. 441, 62 A.2d 37 (1948). When the trial judge is confronted with gruesome or potentially inflammatory photographs, the test for determining their admissibility which he must apply is "whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." *Commonwealth v. Powell, supra,* 428 Pa. at 278–279, 241 A.2d at 121; *Commonwealth v. Peyton, supra,* 360 Pa. at 450, 62 A.2d at 41. A photograph which is not deemed to be inflammatory, however, may be admitted so long as it has relevance and can assist the jury's understanding of the facts of the case before it. *Commonwealth v. Claitt,* 454 Pa. 313, 311 A.2d 922 (1973); *Commonwealth v. Smalls,* 449 Pa. 15, 295 A.2d 298 (1972); *Commonwealth v. Morgan,* 448 Pa. 494, 295 A.2d 77 (1972).

waitress uniform, somewhat bloodstained, the deceased had been wearing when she was shot. Another shows the nude upper torso and bullet holes in the left chest and left arm. The third photograph is of the back of the body and shows the exit hole made by one of the bullets.

In the case at bar, the trial judge concluded that the three photographs in question were neither gruesome nor inflammatory and that, particularly in light of appellant's story that the deceased had shot herself, they were of probative value as a supplement to the pathologist's testimony. We have examined the photographs and we agree. A photograph of a corpse is not inflammatory *per se*. *Commonwealth v. Collins*, 440 Pa. 368, 269 A.2d 882 (1970). As the opinion in *Collins* suggests, it is generally the manner in which a corpse is displayed that causes photographs to be emotionally charged.[4] Here, most of the blood had been removed from the body so that any possible inflammatory effect was reduced, *see Collins, supra,* and, as noted above, only three black and white photographs were shown. *See Commonwealth v. Robinson, supra.* We also agree that the photographs were relevant to the issues involved. " '[I]n the trial of criminal cases photographs of the victim and of the scenes of the crime are admissible to aid the jury in their understanding of the alleged crime, the kind of crime it was, exactly what caused the victim's death and what, if any connection defendant had with it . . . .' ". *Commonwealth v. Robinson*, 433 Pa. 88, 91, 249 A.2d 536, 538 (1969) citing *Commonwealth v. Novak, supra.* Here, in view of the sharply conflicting testimony as to how the shooting came about these pictures provided a meaningful aid to the jurors' understanding of the events in question. *Commonwealth v. Ross*, 452 Pa. 500, 307 A.2d 898 (1973); *Commonwealth v. Novak, supra.* We thus find no abuse of discretion in their admission.[5]

4. Thus, in *Commonwealth v. Scaramuzzino*, 455 Pa. 378, 317 A.2d 225 (1974), this Court, speaking through Mr. Justice Nix, found clearly inflammatory fourteen color slides which graphically depicted a blood stained body, a side view of the body with glass rods protruding from the wounds, and the deceased's heart which had been removed from the body. *See also Commonwealth v. Eckhart*, 430 Pa. 311, 242 A.2d 271 (1968).

5. While cautionary instructions to the jury as to the use and purpose of these photographs would have been appropriate, they are

### III. Trial Rulings

A. On direct examination, appellant testified that his relationship with his wife while they lived in Arizona was "beautiful" and relatively care-free. On cross-examination he was questioned, over objection, concerning the discordant nature of that relationship when the couple resided in Pennsylvania. Appellant contends that all such questions were beyond the scope of permissible cross-examination and that anything that might have occurred in Pennsylvania was so remote in time from the date of his wife's death as to be irrelevant.

The scope of cross-examination of a defendant in a criminal case is one of great latitude. *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967); *Commonwealth v. Prophet*, 307 Pa. 122, 160 A. 597 (1932).[6] Having testified to a happy marriage while in Arizona, appellant opened the way for the Commonwealth to explore other aspects of that relationship and to refute the inference of lack of motive which the appellant surely sought to have the jury draw.

When the victim of an alleged homicide is the spouse of the accused, evidence of the nature of the marital relationship and a lack of affection on the part of the accused towards his spouse is relevant to the issue of motive. *Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A.2d 811 (1969); *Commonwealth v. Nelson*, 396 Pa. 359,

not required when the pictures are found not to be inflammatory. *See Commonwealth v. Robinson, supra; Commonwealth v. Novak, supra; Commonwealth v. Capps*, 382 Pa. 72, 114 A.2d 338 (1955). Hence the failure to give such instructions in this case was not prejudicial error. *Commonwealth v. Smalls, supra*, 449 Pa. at 18, 295 A.2d 298. But, in any event, appellant requested no charge along these lines and has therefore waived his right now to challenge this omission. *See Commonwealth v. Clair*, Pa., 326 A.2d 272 (1974).

6. "The right of cross-examination extends beyond the subjects testified to in direct testimony and includes the right to examine on any facts tending to refute 'inferences or deductions' arising from matters testified to on direct." *Commonwealth v. Lopinson, supra* 427 Pa. at 300, 234 A.2d at 562.

152 A.2d 913 (1959); *Commonwealth v. Jones,* 269 Pa. 589, 113 A. 57 (1921). Although evidence of this sort which is too remote is not properly admissible, *Commonwealth v. Boden,* 399 Pa. 298, 305, 159 A.2d 894, 898 (1960), it is generally true that remoteness of the prior instances of hostility and strained relations affects the weight of that evidence and not its admissibility. *Commonwealth v. Jones, supra,* 269 Pa. at 592, 113 A. at 59; *Commonwealth v. Delfino,* 259 Pa. 272, 102 A. 949 (1918). In the instant case, appellant and his wife resided in Pennsylvania until just six months prior to the date of the latter's death. We cannot say that the trial court erred in concluding that the episodes disclosed by the cross-examination were not so remote as to affect admissibility. *See Commonwealth v. Patskin,* 372 Pa. 402, 93 A.2d 704 (1953).

B. During cross-examination, appellant was asked, over objection, whether his wife had not previously caused his arrest on charges of assault. Although denying that he had ever beaten his wife, appellant did admit the arrest. It is fundamental that a criminal defendant may not be questioned on cross-examination concerning an arrest which has not resulted in conviction when the purpose of that question is to impeach his character or to show a propensity to commit a crime. *See Commonwealth v. Barron,* 438 Pa. 259, 264 A.2d 710 (1970).[7] Here, however, that was not the purpose of the Commonwealth's question; the purpose was strictly re-

7. Act of March 15, 1911, P.L. 20, § 1, 19 P.S. § 711: "Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has . . . been charged with . . . any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—

"One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish [sic] his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or,

"Two. He shall have testified at such trial against a codefendant, charged with the same offense."

buttal. As stated above, appellant in his case in chief had testified to the highly compatible relationship he and his wife had enjoyed in Arizona. This was obviously to prove lack of motive to commit the crime. The prosecution was entitled to meet this testimony with evidence of disharmony between the spouses. Evidence that appellant's wife had caused his arrest for alleged assault upon her was clearly rebuttal, and it was not improper to accomplish that rebuttal by means of cross-examination, notwithstanding that the question involved reference to an arrest. *Commonwealth v. James*, 433 Pa. 508, 253 A. 2d 97 (1969); *Commonwealth v. Dorst*, 285 Pa. 232, 132 A. 168 (1926). See also *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973); *Commonwealth v. Williams*, 307 Pa. 134, 149, 160 A. 602 (1932).

C. Counsel for appellant sought to impeach a Commonwealth witness on cross-examination by means of a written prior inconsistent statement. The witness was not permitted to examine the writing before being asked any questions concerning it, but the court allowed counsel to read to the witness all relevant portions of the statement.

While this Court has never had occasion to squarely consider the proper method of impeaching a witness by a written prior inconsistent statement, the majority of jurisdictions require that the witness first be confronted with the writing. See 4 J. Wigmore, Evidence § 1263, (Chadbourne rev. 1972) and cases collected therein. Professors Wigmore and McCormick, however, argue against the soundness of the rule. Wigmore, *supra* at 636; C. McCormick, Handbook of the Law of Evidence § 28 (2nd ed. 1972). Whether or not there should be a *requirement* that a prior inconsistent writing be shown to a witness before examination concerning it—a question which we need not here decide—appellant should have been *permitted* to lay the foundation for impeachment by this method. There was, however, no question as to au-

thenticity of the statement, and counsel was permitted to read it aloud in its entirety. Thus the jury as well as the witness was made aware of the inconsistency to which attention was being drawn. Under these circumstances there was no impairment of appellant's right of cross-examination. *See Commonwealth v. Lopinson*, 427 Pa. 284, 308–309, 234 A.2d 552, 556 (1967). If any error was involved, it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ Finally, certain aspects of the trial court's charge to the jury are challenged. At trial, however, appellant entered only a general objection to the entire charge. Such an objection was insufficient to preserve these issues for appeal. *Commonwealth v. Clair*, Pa., 326 A.2d 272 (1974); Pa.R.Crim.P. 1119(b); *Commonwealth v. Smith*, 374 Pa. 220, 225, 97 A.2d 25, 28 (1953).

Judgments of sentence affirmed.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice (dissenting).

I dissent.

In my view, the majority misapplies the test of *Commonwealth v. Powell*, 428 Pa. 275, 241 A.2d 119 (1968). In *Powell*, this Court held:

"We are of the opinion that the proper test to be applied by a trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors."

428 Pa. at 278–279, 241 A.2d at 121.

The majority today asserts that where the pictures are not inflammatory, the *Powell* test need not be applied and the photographs may be admitted if they meet the standard test of relevance. This assertion misinterprets

*Powell.* Under our decisions following *Powell,* pictures of murder victims may never be admitted until the trial court decides that the evidentiary value of the pictures exceeds the likelihood that the pictures will inflame the passions of the jury. The inflammatory nature of the picture is considered only to determine whether the evidence meets this standard, not whether the test should be applied at all. *Commonwealth v. Scaramuzzino,* 455 Pa. 378, 317 A.2d 225 (1974); *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974); *Commonwealth v. Woods,* 454 Pa. 250, 311 A.2d 582 (1973); *Commonwealth v. Dankel,* 450 Pa. 437, 301 A.2d 365 (1973); *Commonwealth v. Biebinghauser,* 450 Pa. 336, 300 A.2d 70 (1973); *Commonwealth v. Sullivan,* 450 Pa. 273, 299 A.2d 608, cert. denied, 412 U.S. 923, 93 S.Ct. 2745, 37 L.Ed.2d 150 (1973); *Commonwealth v. Koch,* 446 Pa. 469, 288 A.2d 791 (1972); *Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970); *Commonwealth v. Wilson,* 431 Pa. 21, 244 A.2d 734 (1968), cert. denied, 393 U.S. 1102, 89 S.Ct. 901, 21 L.Ed.2d 794 (1969); *Commonwealth v. Eckhart,* 430 Pa. 311, 242 A.2d 271 (1968).

Applying the *Powell* test, there can be little doubt that the photographs were improperly admitted. The Commonwealth's forensic pathologist's testimony established the range and angle from which each bullet hit the body. The defense did not dispute his testimony (although their interpretations of the ramifications of these facts differed). The photographs merely duplicated the expert's testimony and could have been of little use to the untrained eyes of the jurors. In these circumstances, the value of the photographs was so slight that it was clearly exceeded by the prejudicial effect these pictures had on the jurors. Therefore, the trial court abused its discretion in admitting the pictures. I would reverse the judgment and grant a new trial.

MANDERINO, J., joins in this dissent.