J-A10013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :              PENNSYLVANIA
                                    :

              v.                       :
                                    :

SHARI BETH ABEND            :
                                    :

            Appellant            :     No. 1439 EDA 2023

Appeal from the Judgment of Sentence Entered May 3, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003245-2022

BEFORE: PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:          **FILED JUNE 7, 2024**

Shari Beth Abend appeals from her judgment of sentence for, *inter alia*, drug delivery resulting in death, conspiracy, and involuntary manslaughter, after she sold heroin and crack cocaine to Monique Murdza and Curtis Bucchi; Bucchi eventually died from an overdose. Abend argues the Commonwealth did not prove she caused the death of Bucchi and therefore the evidence was not sufficient to sustain her convictions for drug delivery resulting in death, conspiracy to commit that delivery offense and involuntary manslaughter. Abend also asserts the trial court abused its discretion by allowing the Commonwealth to admit a photograph of Bucchi's deceased body. As we agree with the trial court that these claims do not merit relief, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

We glean the relevant facts from the trial court's thorough recitation of the factual history and our own review of the record. Bucchi lived in a motel room with Murdza. Both Murdza and Bucchi used illegal drugs, including heroin. On February 25, 2022, Murdza purchased heroin and crack cocaine from Abend and Darrell Coasey. Bucchi snorted both the heroin and crack cocaine on the evening of February 25, and then snorted more heroin the following morning. Bucchi died later that morning of an overdose.

Abend was arrested and charged with multiple offenses, including drug delivery resulting in death, conspiracy, and involuntary manslaughter. The matter eventually proceeded to a jury trial.

Murdza testified at the trial. Murdza acknowledged at the outset that she had also been charged with several offenses, including drug delivery resulting in death, for Bucchi's death. *See* N.T., 12/14/2022, at 11. She agreed she was aware she had a constitutional right not to testify but stated she was nonetheless willing to do so. *See id.* at 11-12. She testified the Commonwealth had not offered her anything in return for her cooperation. *See id.* at 88-89.

Murdza told the jury she lived at the New Falls Motel in Falls Township with Bucchi for several months leading up to February 2022. *See id.* at 12-13. She stated she was addicted to heroin during that time and used heroin "every day that [she] could." *Id.* at 17. Murdza testified that Bucchi used

illegal drugs as well and he also began to use heroin in December 2021 to alleviate pain from a toothache. *See id.* at 17-18, 35.

According to Murdza, the only person she bought drugs from in February 2022 was Abend as neither she nor Bucchi had a car. *See id.* at 19-20, 57. Murdza stated she and Bucchi would purchase heroin and crack cocaine from Abend. *See id.* at 20. Murdza explained that she used either her phone or Bucchi's phone to contact Abend for drugs. *See id.* at 22-23. Abend would then come to the motel in her red minivan and would always be accompanied by Coasey, who Murdza believed was Abend's husband. *See id.* at 29-30.

Murdza stated that, although Bucchi previously had bought marijuana and crack cocaine from people other than Abend, Murdza did not have any personal knowledge that Bucchi was getting drugs from any source other than Abend in February 2022. *See id.* at 57, 59, 130. Murdza had never seen Bucchi use heroin other than the heroin purchased by Murdza. *See id.* at 59, 130-131.

Murdza recounted that on February 25, 2022, she or Bucchi reached out to Abend and ordered a bundle and a "dub." *See id.* at 25, 35. She represented that a bundle or a "bun" was ten bags of heroin and a "dub" was $20 worth of crack cocaine. *See id.* at 28. After making the order with Abend on February 25th, Murdza stated that Abend came to the motel in the same red minivan she always drove to drop the drugs to her and was with Coasey. *See id.* at 36. Murdza used Bucchi's money to buy the drugs. *See id.*

Murdza testified the drugs she bought on the night of February 25th were in "clear-ish" baggies stamped with "COVID-19." *See id.* at 38. Murdza brought the drugs into the motel room and immediately snorted one of the bags of heroin, as did Bucchi. *See id.* at 37. Bucchi also used the crack cocaine. *See id.* at 38.

Murdza testified that, after she had snorted another one of the bags of heroin she had bought from Abend, she and Bucchi went to sleep. *See id.* at 40-41. She got up early on the morning of February 26 and snorted another bag of the heroin. *See id.* at 40 -41. Murdza went down the street to the store and when she came back, at around 6:30 in the morning, Bucchi was still in bed but awake and speaking on the phone. **See id.** at 44.

After Bucchi hung up, he asked Murdza for another bag of heroin. *See id.* at 45-46. Murdza gave him the heroin, and Bucchi snorted that bag. *See id.* at 46. Murdza clarified that the bag she handed Bucchi was one of the COVID-19 bags they had bought the night before from Abend. *See id.* at 41, 47, 87-88, 120, 142.

Bucchi went back to sleep but was "breathing weird." *Id.* at 47. Murdza snorted another bag of heroin and nodded off. *See id.* at 47-48. When she woke, Bucchi was "very blue" and was not breathing. *See id.* at 50. Murdza called 911. *See id.* She testified that she put the used and unused COVID-19 stamped baggies, the ones she had bought from Abend the night before, inside a clear plastic bag and put that in her shoe. *See id.* at 51-52.

Police responded to the motel room. Murdza recounted that she went down to the police station and allowed the police to look at her phone, which had text messages with Abend about purchasing drugs. *See id.* at 55-56. Murdza agreed to do a controlled buy with Abend. *See id.* at 55, 57.

Prior to the search the police planned to conduct on Murdza in anticipation of the controlled buy, Murdza disclosed to the searching officer that she had drugs in her shoe. *See id.* at 61. She handed the clear plastic bag with the COVID-19 stamped baggies inside to the searching officer. *See id.* at 112, 114, 116. Those baggies were later confirmed to contain, among other substances, 4-ANPP, fentanyl and xylazine. *See id.* at 202-206.[1]

In executing the controlled buy for the police on February 26, Murdza explained that she contacted Abend to buy heroin. When she met with Abend, Murdza confirmed with Abend that she was buying the same baggies as the COVID-19 stamped baggies from the night before. *See id.* at 60-61. The controlled-buy baggies were also stamped with COVID-19. The contents from the three baggies that were tested from that buy were positive for 4-ANPP, fentanyl and xylazine. *See id.* at 207-209.

Falls Township Police Officer Daniel Matkowski, who was the first officer to respond to Murdza's 911 call, also testified. He reported he arrived at the

---

[1] As the trial court explained, 4-ANPP is a chemical byproduct of fentanyl and xylazine is an "intramuscular tranquilizer for animals." *See* Trial Court Opinion, 10/4/2023, at 4 n.1, n.2 (citations to notes of testimony omitted).

motel around 10:19 in the morning on February 26, 2022. **See** N.T., 12/12/2022 (afternoon), at 55. He entered Bucchi and Murdza's motel room and found Bucchi laying on the bed, with dried vomit near his head. **See id.** at 66, 73. Officer Matkowski testified Bucchi was obviously dead. **See id.**

The Commonwealth showed a picture of Bucchi laying on the motel bed to the officer. Officer Bucchi identified the person in the photograph as the deceased person he found in the motel room and stated that, other than the white stickers placed on Bucchi's body by paramedics, the photograph represented the state in which he discovered Bucchi. **See id.** at 67, 72-73. Over objection, the Commonwealth admitted the photograph into evidence and published the photograph to the jury. **See id.** at 72-73.

Officer Matkowski also reported he conducted a search of the motel room. During that search, the officer recovered four unstamped white wax paper baggies from a trashcan inside the motel room **See id.** at 88. The residue from those baggies later tested positive for 4-ANPP, fentanyl and xylazine. **See** N.T., 12/14/2022, at 200.

Dr. Ian Hood, the medical examiner who performed the autopsy on Bucchi, confirmed that Bucchi's cause of death was "fentanyl and xylazine toxicity." **See** N.T., 12/13/2022, at 37. He explained that ingesting too much fentanyl affects respiration and the user's "breathing will get more and more shallow until finally it stops." **Id.** at 41.

The jury found Abend guilty of, among other offenses, drug delivery resulting in death, conspiracy, and involuntary manslaughter. The trial court originally sentenced Abend to six to 12 years' imprisonment for her drug delivery resulting in death conviction, with no further penalty on the remaining convictions. Abend filed post-sentence motions, which the trial court granted in part and resentenced Abend to four to eight years' imprisonment for her drug delivery resulting in death conviction.

Abend filed a timely notice of appeal and both Abend and the trial court complied with Pa.R.A.P. 1925. She now raises these two issues for our review:

A. Was the evidence with respect to the element of causation insufficient to support the verdicts of guilty for the offense of Drug Delivery Resulting in Death, Criminal Conspiracy to Commit Drug Delivery Resulting in Death, and Involuntary Manslaughter?

B. Did the trial court err in admitting and publishing a photograph of the deceased's body, as the photograph was highly inflammatory and needlessly cumulative, was of no probative value, and any probative value was clearly outweighed by a danger of unfair prejudice?

Appellant's Brief at 9 (lower court's answers omitted).

Abend's first issue challenges the sufficiency of the evidence as it relates to her drug delivery resulting in death, conspiracy to commit drug delivery resulting in death, and involuntary manslaughter convictions. She claims the Commonwealth failed to establish the drugs she sold to Murdza and Bucchi were the drugs that caused Bucchi's death. This claim does not warrant any relief.

When reviewing challenges to the sufficiency of the evidence, we must determine whether, when viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence presented at trial and all reasonable inferences derived from the evidence was sufficient to establish all the elements of the challenged offenses beyond a reasonable doubt. *See* ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011). The Commonwealth may sustain its burden entirely by circumstantial evidence. *See id.* Moreover, the factfinder "passes upon the weight and credibility of each witness's testimony, [and] is free to believe all, part or none of the evidence." *Id.* (citation omitted).

Here, Abend challenges her convictions for drug delivery resulting in death, conspiracy to commit drug delivery resulting in death, and involuntary manslaughter on the basis that the Commonwealth failed to prove causation for each of these offenses.

Before outlining the individual elements for each of the specific offenses Abend challenges, we address the common element of all three of the crimes Abend contends the Commonwealth did not prove, *i.e.* causation. For our purposes here, the Crimes Code provides that "[c]onduct is the cause of a result when: (1) it is an antecedent but for which the result in question would not have occurred[.]" 18 Pa. C.S.A. § 303(a)(1). As such, the statute "requires a 'but-for' test of causation … [with the caveat that] the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it

would be unfair to hold the defendant criminally responsible." ***Commonwealth v. Kakhankham***, 132 A.3d 986, 993 (Pa. Super. 2015) (citations and some internal quotation marks omitted).

To sustain a conviction for drug delivery resulting in death, the Commonwealth must show that: (1) the defendant intentionally delivered a controlled substance, (2) with a reckless disregard of death and (3) another person died as a result of using that controlled substance. ***See*** 18 Pa.C.S.A. § 2506(a); ***Commonwealth v. Arrington***, 247 A.3d 456, 462 (Pa. Super. 2021). "[T]he sale of heroin satisfies the reckless element as to the possibility of death by the buyer[.]" ***Commonwealth v. Storey***, 167 A.3d 750, 758 (Pa. Super. 2017) (citation omitted).

To sustain a conviction for conspiracy to commit drug delivery resulting in death, meanwhile, the Commonwealth must prove that the "defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." ***Arrington***, 247 A.3d at 461 (citations omitted); ***see also*** 18 Pa.C.S.A. § 903(a). "A conspiracy to commit the overt act of an **intentional drug delivery** links the conspirators to the foreseeable consequence that the drug user may die." ***Commonwealth v. Carr***, 227 A.3d 11, 18 (Pa. Super. 2020) (emphasis in original).

Lastly, a defendant is guilty of involuntary manslaughter when she: (1) commits an act, (2) with a reckless state of mind and (3) the act causes the victim's death. *See* 18 Pa.C.S.A. § 2504(a); *Arrington*, 247 A.3d at 461.

After reviewing the record, we agree with the Commonwealth that the trial court did not err by finding the evidence was sufficient to support all three of the offenses challenged by Abend and specifically, that the drugs Abend delivered caused Bucchi's death. As cogently explained and summarized by the Commonwealth:

> The evidence admitted at trial, viewed in the light most favorable to the Commonwealth, established that [Abend] conspired with Murdza and [Coasey] to deliver heroin that killed [Bucchi] in baggies stamped "COVID-19." Forensic evidence determined that [Bucchi] died of toxicity from fentanyl and xylazine – the same substances found in the stamped heroin baggies purchased by Murdza and [Bucchi].
>
> Murdza's testimony – which the jury was free to believe – conclusively established that [Abend] was their sole dealer of heroin around the time of [Bucchi's] overdose, and that [Bucchi] specifically ingested the "COVID-19" stamped heroin baggies supplied by [Abend] immediately prior to his death. Her testimony also established that [Bucchi] began to "breathe weird" after ingesting his final bag of "COVID-19" stamped heroin, which Dr. Hood confirmed to be symptomatic of an impending opioid overdose death.

Commonwealth's Brief at 10-11 (single paragraph divided into two paragraphs).

Abend argues, however, the Commonwealth failed to prove that the COVID-19 stamped baggies of drugs delivered by Abend were the ones that killed Bucchi because the police found unstamped baggies in the motel room's

- 10 -

trashcan that also tested positive for fentanyl and xylazine. As such, Abend maintains, the Commonwealth failed to establish Abend's conduct caused Bucchi's death because Bucchi could have ingested drugs from another source that caused his overdose. This argument does not merit any relief.

As noted above, Murdza testified that she only bought heroin from Abend at the time of Bucchi's death and she had no knowledge of Bucchi purchasing heroin from other sources. Importantly, Murdza also testified that she handed Bucchi one of the baggies of heroin stamped with COVID-19 purchased from Abend, which Bucchi proceeded to snort, before his breathing became labored and he died from drug toxicity. Again, as noted above, the jury was free to believe Murdza's testimony and the jury could have reasonably concluded from that testimony that it was the drugs delivered by Abend that caused Bucchi to overdose and die.

When considering all of the evidence, we agree with the trial court that the evidence was sufficient for the jury to find Abend conspired to sell, and then intentionally sold, heroin and crack cocaine to Murdza and Bucchi, with a reckless disregard that those drugs could cause death, and that the drugs sold by Abend did, in fact, cause Bucchi's overdose and his death. As such, Abend's sufficiency claims fail, and no relief is due.

In her second claim, Abend argues the trial court abused its discretion by admitting a photograph of Bucchi, deceased, lying on the bed in the motel

room, because the prejudicial effect of the photograph outweighed its probative value. This claim also fails.

The admission of evidence is within the sound discretion of the trial court, and we will not disturb the trial court's evidentiary rulings on appeal unless there has been an abuse of that discretion. *See Commonwealth v. Reid*, 99 A.3d 470, 493 (Pa. 2014). When the evidence at issue is a photograph of a homicide victim, the trial court must conduct the following two-part analysis to determine if the photograph is admissible:

> The trial judge must initially decide whether the photographs possess inflammatory characteristics. If they do not, the photographs are admissible as are any evidentiary items, subject to the qualification of relevance. If the photographs are deemed inflammatory, then the trial judge must decide whether the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of their inflaming the passions of the jurors.

*Commonwealth v. Hudson*, 414 A.2d 1381, 1386 (Pa. 1980) (citations omitted). Our courts have consistently held that a photograph depicting a deceased person is not inflammatory *per se*. *See Commonwealth v. Petrakovich*, 329 A.2d 844, 849 (Pa. 1974). Rather, "it is generally the manner in which a corpse is displayed that causes photographs to be emotionally charged." *Id.* (footnote omitted).

Here, defense counsel objected when the Commonwealth sought to introduce the photograph of Bucchi as he was found when the police arrived, arguing that it "depicted blood dripping down, you know, the bed. He looks, you know, pale. He looks to be deceased." N.T., 12/12/2022 (afternoon), at

71. In overruling the objection, the trial court stated the photograph was relevant to "establish[ing that] when [the police] came into the [motel] room [Bucchi] was found dead." *Id.* The trial court also found the photograph was not inflammatory, stating that it did not "appear particularly gruesome to me in any way." *Id.*

Here, we see no error in the court's conclusion that the photograph was relevant and not inflammatory and was therefore admissible. The photograph, which we have reviewed, shows Bucchi deceased and lying on the bed, fully clothed, and without any visible injuries. *See* Ex. C-6. The photograph does show a brown substance by Bucchi's head, which defense counsel indicated was blood, but Officer Matkowski testified was actually dried vomit. *See* N.T., 12/12/2022 (afternoon), at 73; Ex. C-6. Either way, we fail to see how the court abused its discretion by determining the photograph was not inflammatory. *See Hudson*, 414 A.2d at 1387 (stating that the mere fact that blood is visible in a photograph does not make it inflammatory); *Petrakovich*, 329 A.2d at 849.

As the Commonwealth notes, although Abend asserts in her statement of the questions involved that the photograph was "highly inflammatory," she does not expand on that assertion in her argument section or directly challenge, in any meaningful way, the court's finding that the photograph was not inflammatory. Instead, she skips to the second part of the analysis for a homicide photograph's admissibility, the balancing test, which only becomes

- 13 -

necessary if the trial court determines a photograph is inflammatory. However, the court here determined that the photograph was not inflammatory but was relevant and therefore admissible.

We recognize that within Abend's argument that the prejudicial effect of the photograph outweighed its probative value, Abend does assert the photograph was "irrelevant" because Bucchi's identity or manner of death was not in dispute. Appellant's Brief at 21. However, the trial court determined that the photograph was relevant to assist the jury in understanding the circumstances of the discovery of Bucchi's body by police and the circumstances of his death. Again, we see no abuse of discretion in that determination. *See* Pa.R.E. 401 (providing that evidence is relevant if it has any tendency to make a fact more or less probable or is of consequence in determining the action).

As we do not discern any abuse of discretion in the court's determinations that the single photograph of Bucchi's deceased body was relevant and not inflammatory and therefore admissible, Abend's second claim, like her first, does not afford her any basis for relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/7/2024